Filed 10/22/13

CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----


| | |
|---|---|
| In re the Marriage of ANNA and CLARK WOOLSEY. | |
| ANNA WOOLSEY,<br><br>   Respondent,<br><br> v.<br><br>CLARK WOOLSEY,<br><br>   Appellant. | C067800<br><br>(Super. Ct. No. SDR0034434) |


  APPEAL from a judgment of the Superior Court of Placer County, Robert P. McElhany, Judge.  Affirmed.

  Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Appellant.

  Gary, Till & Burlingham and Steven R. Burlingham for Respondent.

---

 **\*** Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III, IV, VI, VII, and VIII of the discussion.

In this marital dissolution case, appellant Clark Woolsey persuaded respondent Anna Woolsey to participate in a church-sponsored reconciliation session that turned into a mediation[1] of issues regarding division of property, support, and custody of their two children.  The mediation resulted in a marital settlement agreement that divided the community property, permanently waived Anna's[2] entitlement to spousal support, and presented a parenting plan in which the parties' children would remain in Anna's primary care.  The agreement declared that the parties had disclosed all of their financial matters during the mediation.

Anna moved to enforce the agreement under Code of Civil Procedure section 664.6.  Clark apparently changed his mind about the terms of the agreement and opposed entry of judgment.  After a trial, the court entered judgment on the agreement.  The court also made custody and visitation determinations in the same judgment.

Clark appeals, contending (1) the marital settlement agreement is unenforceable for lack of timely financial disclosures under Family Code sections 2104 and 2105,[3] (2) the parties' noncompliance with Placer County Local Rules of Court, rule 30.7 (rule 30.7) requires reversal of the judgment, (3) his due process rights were violated because he was prevented from fully presenting his evidence at trial, (4) to the extent the marital settlement agreement was enforceable, it required the parties to engage in further mediation or arbitration, (5) undue influence on Clark during the mediation renders the agreement unenforceable, (6) the trial court did not properly address the issue of deceit,

---

[1]	Mediation is "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement."  (Evid. Code, § 1115.)

[2]	For ease of reference, we refer to the parties by their first names.  (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475–476, fn. 1.)

[3]	Undesignated statutory references are to the Family Code.

2

(7) the custody order was not made in the best interests of the parties' children, and

(8) the trial court failed to properly respond to Clark's objections to the tentative ruling.

We conclude the trial court properly entered judgment on the marital settlement agreement. In response to Clark's contentions, we conclude: (1) parties who agree to settle their disputes by private mediation may also agree to make financial disclosures that do not meet the technical procedural requirements of sections 2104 and 2105; (2) rule 30.7 is invalid insofar as it imposes additional requirements on a mediated settlement agreement beyond those specified by statute; (3) the record reveals Clark received a full and fair trial; (4) Clark forfeited the right to further mediation or arbitration of the issues; (5) the mediation confidentiality imposed by Evidence Code section 1119 undermines Clark's arguments regarding undue influence and there is no presumption of undue influence in a marital settlement agreement reached as the result of mediation; (6) Clark's failure to provide any legal authority that supports his deceit argument forfeits the issue on appeal; (7) Clark's challenges to the custody and visitation terms in the judgment do not establish an abuse of discretion by the trial court; and (8) the trial court's statement of decision is adequate in addressing the issues presented for trial. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

*Marriage and Separation*

The parties married in September 2001. They had two children, who were born in California: Grant, who was born in July 2002, and Claire, who was born in February 2004. The parties lived in California until they moved to Missouri in December 2007. Clark and Anna separated on April 30 or May 1, 2009. Anna and the children moved back to California, where Anna had lived her entire life except for the 18 months she resided in Missouri.

In July 2009, Anna filed a petition for legal separation.

3

*Mediation Results in a Marital Settlement Agreement*

In August 2009, Clark hoped to achieve reconciliation with Anna and urged her to participate in mediation provided by Live at Peace Ministries. Anna was skeptical but agreed to participate.

Mediation began on August 20, 2009, but no agreement to reconcile was reached during the first two days. Thus, the focus of the mediation for the next two days was on division of community property, custody, and other issues related to dissolution of marriage. The mediation was successful and the parties personally signed a marital settlement agreement on August 23, 2009.[4] The agreement resolved issues of custody, division of community property, and set up a plan for communication between Clark and Anna.

On the same day the parties signed the marital settlement agreement, Clark was served with Anna's petition for legal separation.

In September 2009, Anna filed her preliminary and final declaration of disclosure and income and expense declaration. A month later, the parties entered a stipulation regarding custody and visitation in which they agreed Anna would have custody of the children "at all times" except for the period from October 30 to November 1, 2009, and the Thanksgiving holiday period of November 21 to 29, 2009. Anna was entitled to keep the children during the entire Christmas holiday.

---

[4] Although titled a separation agreement, we shall refer to the document as a marital settlement agreement because it comprehensively resolved issues related to dissolution of marriage –- rather than just separation. At the same time the parties entered the marital separation agreement, they also agreed on "the following public use statement," which explained: " 'Clark and Anna met for four days to work towards reconciling their relationship. With God's help, and with the desire to honor and glorify God, Clark and Anna heard each other and addressed their failures. Although they are filing for divorce, they desire to live a life of peace as they continue to serve and parent their children. Please pray for them as they grow in their relationship with God, their children, and others.' "

In January 2010, Anna filed an amended petition to seek dissolution of marriage. That same month, Clark served a preliminary declaration of disclosure. He never filed a final disclosure.

### *Trial on Enforceability of the Marital Settlement Agreement and on Issues of Custody and Visitation*

In February 2010, Anna moved to enter judgment to enforce the marital settlement agreement under Code of Civil Procedure section 664.6. Clark opposed entry of judgment on the agreement, and a one-day trial occurred on August 16, 2010. During trial Clark represented himself while Anna had legal counsel. Clark cross-examined Anna and examined Jack D. Love, M.A., M.F.T., the child custody mediator. Although Clark testified on his own behalf, he did not call any witnesses except for Love. During his testimony, Clark admitted he was not aware of any marital asset that was not discussed during the August 2009 mediation.

At the end of his testimony, Clark stated: "That's it." Clark did not make any offer of proof regarding additional evidence he wanted to introduce. Instead, he agreed to a post-trial briefing schedule. Consistent with that schedule, Clark filed a post-trial brief. In his brief, Clark did not request that the court take additional evidence, nor did he object that he had not received a full trial on the contested issues.

The trial court granted Anna's motion to enter judgment on the marital settlement agreement under Code of Civil Procedure section 664.6. The court also awarded joint legal and physical custody, with a parenting schedule that confirmed Anna as the primary caregiver for the children.

Clark timely appealed from the judgment.

DISCUSSION

# I

## *Financial Disclosures*

Clark contends the marital settlement agreement must be set aside because the parties failed to make the financial disclosures in compliance with sections 2104 and 2105. We reject the contention.

## A.

## *Family Code Disclosure Requirements*

Under the Family Code, "parties to marital dissolution proceedings have an affirmative duty to exchange both a preliminary and a final declaration of disclosure, detailing all of their assets and liabilities, prior to judgment being entered." (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 331.)

To this end, the version of section 2104 in effect at the time judgment was entered governed preliminary disclosures by requiring that, "[e]xcept by court order for good cause, as provided in Section 2107, after or concurrently with service of the petition for dissolution or nullity of marriage or legal separation of the parties, each party shall serve on the other party a preliminary declaration of disclosure, executed under penalty of perjury on a form prescribed by the Judicial Council." (Former § 2104, subd. (a); Stats. 2009, ch. 110, § 1.)

Similarly, section 2105 requires final financial disclosures by providing that, "[e]xcept by court order for good cause, before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date, each party, or the attorney for the party in this matter, shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury on a form prescribed by the Judicial Council, unless the parties mutually waive the final declaration of disclosure."

## B.

### *Private or Nonjudicial Arbitrations and Mediations*

"Sections 2104 and 2105 were enacted in 1993, as part of a statutory scheme designed to ensure that parties to a dissolution action meet their fiduciary duty to make full disclosure of their assets and liabilities.  (§ 2100.)" (*Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1507-1508 (*Elden*).)  *Elden* involved the question of whether the specific procedural and disclosure requirements of sections 2104 and 2105 applied even when the parties elected to settle issues pertaining to marital dissolution by private arbitration.  (*Ibid.*)  The *Elden* court held that by agreeing to submit their dispute to nonjudicial arbitration, the parties' "controversy was removed from the procedures applicable to trials.  (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 91.)" (*Elden,* at p. 1508.)

In excusing the disclosure requirements of sections 2104 and 2105 for nonjudicial arbitration cases, the *Elden* court explained:  "Although we recognize the public policy reasons for the disclosure sections set forth within the Family Code, we conclude that the parties to a dissolution who have agreed to engage in private arbitration of their property issues are entitled to adopt other, more summary procedures for financial disclosure. Here, for example, according to the arbitrator, the parties assured him that they had made the necessary disclosures.  Under these circumstances, and because parties to private arbitrations waive a number of rights just as important as those set forth in the disclosure provisions at issue here, we conclude that the trial court erred in holding that Husband and Wife were required -— prior to the arbitration -— to submit the disclosure statement required by section 2105.  If parties to a marital dissolution enter an agreement to settle their property or support issues by private or nonjudicial arbitration, they may do so without complying with section 2104 or section 2105." (*Elden, supra,* 53 Cal.App.4th at pp. 1508-1509.)  The result in *Elden* was further supported "by the strong public policy in

favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." (*Id.* at p. 1509.)

We agree with *Elden* that parties to a marital dissolution action may opt out of litigation by agreeing to an alternative dispute resolution mechanism that does not involve all of the formalities required of an adversarial system of justice. Private mediation, like nonjudicial arbitration, offers a speedy and less expensive approach to resolution of issues arising from marital dissolution. As recognized by the California Supreme Court, "mediation [is] a form of alternative dispute resolution encouraged and, in some cases required by, the Legislature." (*Foxgate Homeowners' Ass'n v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 (*Foxgate*).) "Implementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986. In that year the Legislature enacted provisions for dispute resolution programs, *including but not limited to mediation, conciliation, and arbitration*, as alternatives to formal court proceedings which it found to be 'unnecessarily costly, time-consuming, and complex' as contrasted with noncoercive dispute resolution. (Bus. & Prof. Code, §§ 465, 466.)" (*Foxgate,* at p. 14, italics added.)

Private mediation, like nonjudicial arbitration, offers an alternate approach to resolve disputed issues arising from a marital dissolution. Requiring technical compliance with disclosure rules designed for adversarial litigation would undermine the strong public policy of allowing parties to choose speedy and less costly avenues for resolving their disputes. Parties who agree to settle their dispute by private mediation may also agree to make financial disclosures that do not meet the technical procedural requirements of sections 2104 and 2105. Thus, strict compliance with sections 2104 and 2105 is not required for private mediations that address issues arising out of a marital dissolution.

8

## C.

### *Post-Mediation Disclosures Prior to Entry of Judgment*

After a mediation in a marital dissolution case, parties must nonetheless comply with section 2106 prior to entry of judgment by the trial court. In pertinent part, section 2106 instructs that "no judgment shall be entered with respect to the parties' property rights without each party, or the attorney for that party in this matter, having executed and served a copy of the final declaration of disclosure and current income and expense declaration." Exceptions to this disclosure requirement are written waivers by the parties under section 2105, subdivision (d),[5] cases involving default judgments within the meaning of section 2110, and motions to waive disclosures for good cause under section 2107.[6]

---

[5] Subdivision (d) of section 2105 provides: "The parties may stipulate to a mutual waiver of the requirements of subdivision (a) concerning the final declaration of disclosure, by execution of a waiver under penalty of perjury entered into in open court or by separate stipulation. The waiver shall include all of the following representations: [¶] (1) Both parties have complied with Section 2104 and the preliminary declarations of disclosure have been completed and exchanged. [¶] (2) Both parties have completed and exchanged a current income and expense declaration, that includes all material facts and information regarding that party's earnings, accumulations, and expenses. [¶] (3) Both parties have fully complied with Section 2102 and have fully augmented the preliminary declarations of disclosure, including disclosure of all material facts and information regarding the characterization of all assets and liabilities, the valuation of all assets that are contended to be community property or in which it is contended the community has an interest, and the amounts of all obligations that are contended to be community obligations or for which it is contended the community has liability. [¶] (4) The waiver is knowingly, intelligently, and voluntarily entered into by each of the parties. [¶] (5) Each party understands that this waiver does not limit the legal disclosure obligations of the parties, but rather is a statement under penalty of perjury that those obligations have been fulfilled. Each party further understands that noncompliance with those obligations will result in the court setting aside the judgment."

[6] In pertinent part, subdivision (b)(3) of section 2107 allows a party who has properly served declarations of disclosure to move for a "waiver of receipt of the

9

In this case, Anna and Clark made multiple disclosures of their finances prior to entry of judgment. The marital settlement agreement that culminated from the mediation declares that "Clark and Anna agree that they have fully disclosed all financial matters." Thus, the agreement addresses the parties' cash assets and debts, provides for division of their real property, and addresses such specifics as whose name should appear on the cable bill, investigation of health insurance options, life insurance policies, and financial accounts for their children. Moreover, the agreement even confirms to Anna and Clark items of personal property such as specific items of children's furniture, exercise equipment, linens and blankets, Christmas decorations, camping gear, and book shelves. In the event Clark and Anna forgot to address any piece of property, the agreement includes the catch-all provision that "[a]ny remaining unwanted items may be disposed of or sold at Clark's discretion."

After the mediation and before entry of judgment, Anna and Clark both served each other with preliminary financial disclosures. Anna served her final disclosure at the same time as her preliminary disclosure. However, Clark never filed a final disclosure.

We reject the argument that the trial court was precluded from entering judgment on the marital settlement agreement for lack of disclosures. The parties did serve each other with disclosures prior to trial and the subsequent entry of judgment. While Clark only served his preliminary disclosure, he may not be heard to complain about his own failure to serve the final financial disclosure. Also, having urged Anna to engage in mediation, Clark cannot now complain he received full disclosure during the mediation rather than by formal document under section 2104 or 2105 prior to the mediation. (*Elden, supra*, 53 Cal.App.4th at pp. 1508-1509.) Allowing "a *non*-complying party [to] unilaterally undo a judgment after trial when he or she would have to comply to obtain

noncomplying party's preliminary declaration of disclosure pursuant to Section 2104 or final declaration of disclosure pursuant to Section 2105."

10

disclosure before trial [would] create[] a most perverse set of incentives: . . . [A] party could *deliberately* not comply with disclosure requirements, keep mum, see if the trial results in an acceptable judgment, and then have the opportunity to obtain a better result by pulling the non-disclosure card out of his or her sleeve on appeal or new trial motion. That is the sort of absurdity of statutory result that courts simply do not countenance." (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 528.) Accordingly, we reject Clark's argument that the lack of financial disclosures precluded the trial court from subsequently entering judgment on the mediated agreement.

## II

### *Rule 30.7 of the Placer County Local Rules of Court*

Clark next argues the trial court erred in entering judgment on the marital settlement agreement because it did not comply with the requirements of rule 30.7 that such agreements be notarized and admonish parties of their right to seek legal counsel.[7]

---

**7** Rule 30.7 provides:

"No property settlement agreement, or stipulation or agreement for entry of any order or judgment wherein the parties settle any issue relating to property, support, custody, visitation or paternity will be approved by the Court or incorporated by reference into a judgment without meeting the following requirements:

"A. If both parties are represented by counsel, the agreement must be signed by both parties and their respective counsel.

"B. If any one of the parties is represented by counsel, the agreement must be signed by both parties and the attorney for the represented party. The signature of the unrepresented party must be notarized, or acknowledged before a clerk of the Court under Civil Code § 1181(a) and must appear immediately after the following statement: [Effective date 7/1/01]

" 'The undersigned party has been advised to consult an attorney regarding the subject matter of this agreement, but has declined to do so.'

11

We conclude rule 30.7 is invalid insofar as the rule imposes requirements on a marital settlement agreement in addition to those required by Evidence Code section 1123, section 2550, and Code of Civil Procedure section 664.6.[8]

## A.

### *The Trial Court Excused Compliance with Rule 30.7*

The trial court rejected Clark's challenge to the marital settlement agreement for noncompliance with rule 30.7 as follows:  "The court finds that neither party was represented by an attorney in the negotiation and preparation of the Settlement Agreement; it was all accomplished through mediation with the Live at Peace Ministries. Compliance with Placer County Superior Court Rule 30.7(a) and (b) is not required.  The signatures of the parties were not notarized as required by Rule 30.7(c), which is a requirement in order that the Court can be assured that the signatures are genuine, in this case that is not an issue, the parties have acknowledged that the signatures are theirs.  In the Rules of Procedure for Christian Conciliation, to which the parties agreed to be bound they were advised of their right to legal representation in the mediation process."

---

"C. If neither party is represented by counsel, the agreement must be signed by both parties.  The signatures of the parties must be notarized, or acknowledged before a clerk of the court under Civil Code § 1181(a) and are to appear immediately after the following statement:

" 'The undersigned parties understand that they have the right to consult an attorney regarding the subject matter of this agreement and knowingly give up that right.' [Effective date 7/1/01]"
(<http://www.placer.courts.ca.gov/forms/Local_Rules_Effective_7-1-13.pdf> [as of Oct. 22, 2013].)

[8]     The trial court excused the notarization and admonition of counsel requirements of rule 30.7.  The failure of respondent to address the trial court's ruling excusing compliance with the admonition of counsel requirement does not govern our analysis or conclusion.  It is well settled that a respondent's failure to address a particular issue, or even to file a brief, does not determine the outcome of an appeal.  (*Walker v. Porter* (1974) 44 Cal.App.3d 174, 177; *Baldwin v. Baldwin* (1944) 67 Cal.App.2d 175, 176.)

## B.

### *Review of Local Rules of Court*

As the California Supreme Court explained in the seminal case of *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*), "trial courts possess inherent rulemaking authority as well as rulemaking authority granted by statute. (*Rutherford v. Owens–Illinois, Inc.* (1997) 16 Cal.4th 953, 967 (*Rutherford*); Code Civ. Proc, §§ 128, 177, 575.1; Gov. Code, § 68070.) 'It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] . . . ". . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.]" ' (*Rutherford, supra,* 16 Cal.4th at p. 967.)

". . . A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the California Constitution or case law. (*Rutherford, supra,* at pp. 967–968; see also *Hall v. Superior Court* (2005) 133 Cal.App.4th 908, 916–918.) As provided in Government Code section 68070, subdivision (a): 'Every court may make rules for its own government and the government of its officers *not inconsistent with law or with the rules adopted and prescribed by the Judicial Council.*' (Italics added; see also 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 204, p. 272; *id.* (2006 supp.) § 204, pp. 87–88.) In sum, local courts may not create their own rules of evidence and procedure in conflict with statewide statutes." (*Elkins, supra,* 41 Cal.4th at pp. 1351-1352.)

One court summarized: "A rule of court may go beyond the provisions of a related statute" only "*so long as it reasonably furthers the statutory purpose. (Butterfield v. Butterfield* (1934) 1 Cal.2d 227, 228 [rule requiring points and authorities in support of motion for change of venue]; *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 29 [rule limiting

13

time to file opposition to summary judgment motion].)  However, if a statute even implicitly or inferentially reflects a legislative choice to require a particular procedure, a rule of court may not deviate from that procedure.  (*People v. Hall* [(1994)] 8 Cal.4th [950,] 961–962 [rule limiting aggravating factors to be considered in imposing sentence enhancements conflicted with Legislature's evident intent to apply full range of factors]; *California Court Reporters Assn. v. Judicial Council of California* [(1995)] 39 Cal.App.4th [15,] 26–31 [rule permitting electronic recording of superior court proceedings conflicted with implicit legislative intent that such proceedings be stenographically recorded]; *Cox v. Superior Court* [(1994)] 19 Cal.App.4th [1046,] 1050–1051 [local rule requiring notice of motion to suppress at preliminary hearing conflicted with statute raising 'reasonable inference' that no prior notice is required].)"  (*Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 364, italics added.)

And, as the *Elkins* court noted, "Reviewing courts have not hesitated to strike down local court rules or policies on the ground they are inconsistent with statute, with California Rules of Court promulgated by the Judicial Council, or with case law or constitutional law.  Appellate decisions have invalidated local rules or restricted their application in many areas of affected litigation, including dissolution actions."  (*Elkins, supra,* 41 Cal.4th at p. 1352.)

A notable example among decisions striking down local rules cited by the *Elkins* court is the case of *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653.  (*Elkins, supra,* 41 Cal.4th at p. 1352, fn. 5.)  In *Hogoboom*, the Court of Appeal struck down a local rule imposing a family law mediation fee *in addition to* fees specifically established by statute.  (51 Cal.App.4th at p. 656.)  The *Hogoboom* court concluded that the Legislature "has so fully covered by general law matters relating to fees for family law and domestic violence mediation occurring in conciliation court that it must be considered a matter of state concern" that an additional fee on family law mediation is

14

precluded. (*Ibid.*) Accordingly, a local rule imposing an additional fee on family court mediation was held invalid. (*Ibid.*)

## C.

### *Entry of Judgment on Mediated Agreements in Marital Dissolution Proceedings*

Section 2550 allows parties to divide community property by written agreement.[9] "[S]ection 2550 contemplates that the parties in a marital dissolution action can agree on a lopsided division of community property, but only if it is evidenced: (1) by a written agreement of the parties; or (2) by an oral stipulation of the parties in open court. If such an agreement is entered into, the court *must* accept the parties' written agreement or in-court oral stipulation regarding the disposition of their property. (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 91.) The court's 'only role with regard to a proper stipulated disposition of marital property is to accept the stipulation and, if requested, to incorporate the disposition into the judgment.' (*Id.* at p. 91.)" (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201; accord *Mejia v. Reed* (2003) 31 Cal.4th 657, 666.) Section 2550 does not require notarization or advisement to seek legal counsel when allowing a written agreement to divide property.

We note that " '[p]roperty settlement agreements occupy a favored position in the law of this state. . . .' (*Adams v. Adams* (1947) 29 Cal.2d 621, 624.) Courts are reluctant to disturb them 'except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the

---

[9]     Section 2550 provides: "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally."

confidential relationship of the parties is valid and binding on the court. [Citations.]' (*Ibid.*)" (*In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22.)

Once a settlement agreement is entered into by the parties, they may avail themselves of a quick and effective avenue for enforcement by making a motion to enter judgment on the agreement. To this end, Code of Civil Procedure section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

We recognize that " '[t]he statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive. It is merely an expeditious, valid alternative statutorily created. (*Kilpatrick v. Beebe* (1990) 219 Cal.App.3d 1527, 1529.) Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense.' (*Nicholson v. Barab* (1991) 233 Cal.App.3d 1671, 1681; see also *Levy v. Superior Court* [(1995)] 10 Cal.4th [578,] 586, fn. 5; *Robertson v. Chen* [(1996)] 44 Cal.App.4th [1290,] 1293 ['Section 664.6 is not the exclusive means of enforcing a settlement agreement; it is simply a summary procedure available when certain prerequisites are satisfied'].)" (*Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1122.) Even though it is not exclusive, Code of Civil Procedure section 664.6 is intended to provide a means for enforcing an agreement that requires nothing more than a single motion. "The Legislature created this procedure to benefit not only parties but also the justice system, relieving it of the burden of more time consuming and expensive processes." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1298.)

16

Code of Civil Procedure section 664.6 requires only that a settlement agreement be reduced to writing and signed by the parties, or orally stated in court. For a written settlement agreement reached in a mediation, the Evidence Code also requires that it demonstrate a present intent of the parties to be bound by the terms of the agreement.[10] (See generally *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 197.)

The Legislature has enacted statutes to further the strong public policy of encouraging out-of-court resolution of disputes. (*Elden, supra,* 53 Cal.App.4th 1497 at pp. 1507-1509; see also *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 118.) The Legislature has imposed specific requirements for settlement agreements and provided an expedient method of enforcing them. There is nothing in the Evidence or Family Code or in the Code of Civil Procedure that requires a marital settlement agreement to be notarized or contain talismanic language to inform unrepresented parties about the right to legal counsel. (See Evid. Code, § 1123; § 2550; Code Civ. Proc., § 664.6.) Thus, the addition of requirements to those imposed by the California codes for mediated marital agreements is inconsistent with the Legislature's specifications of the requirements for enforceability. It has long been settled that "[a] court may not by rule change or add to procedural requirements established by statutory provision. An order attempting to add requirements to those prescribed by a statute is to such an extent a nullity and void. (Cf. *Butterfield v. Butterfield*, [*sic*] 1 Cal.2d 227, 228; *Henry v. Willett*, [*sic*] 60 Cal.App. 244,

---

**10** Evidence Code section 1123 provides: "A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied: [¶] (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect. [¶] (b) The agreement provides that it is enforceable or binding or words to that effect. [¶] (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure. [¶] (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."

252.)"  (*Conae v. Conae* (1952) 109 Cal.App.2d 696, 697.)  Thus, we conclude rule 30.7 is invalid insofar as it imposes additional requirements on entry of judgment on a mediated agreement that resolves marital dissolution issues.

To adopt the holding urged by Clark could result in differing, and perhaps conflicting, requirements from various local rules of court.  This case provides an apt example.  Here, the parties availed themselves of a mediation program offered by Live at Peace Ministries.  That program yielded a mutually acceptable agreement fully consistent with the governing statutes.  However, if trial courts have discretion to invalidate such otherwise valid agreements based on additional requirements of authenticity imposed by local court rules, then Live at Peace Ministries and other mediators in California would have to (1) anticipate where the mediated settlement agreement would most likely be filed, and (2) understand and comply with the local rules governing the county of filing.  However, parties may not know where they will file for dissolution.  "[B]ecause there is no specific statute governing venue in proceedings for legal separation, the venue rules of [Code of Civil Procedure] section 395, subdivision (a), applicable to civil actions generally, govern nullity or separation actions, and the proper place for trial is ordinarily the county of respondent's residence."  (*Forster v. Superior Court* (1992) 11 Cal.App.4th 782, 786-787; but see Code Civ. Proc., § 664.6 [either party may bring a motion to enforce a mediated agreement].)

In short, Code of Civil Procedure section 664.6 provides an efficient and certain manner in which to enforce a settlement agreement so long as that section's requirements are satisfied.  As our Supreme Court has noted, "the Legislature enacted section 664.6, which created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met."  (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585.)  This legislative intent would be thwarted if a trial court could decline to enforce an otherwise valid settlement agreement on grounds that section 664.6 employs the word "may."  (See *People v. Ledesma* (1997) 16 Cal.4th

18

90, 95.) Thus, trial courts lack discretion to strike down mediated agreements that otherwise comply with state law.

We note that even the trial court in this case did not enforce rule 30.7, excusing performance because the marital settlement agreement comported with the intent underlying the rule. It would be incongruous to ignore the statutes governing mediated agreements in order to give trial courts discretion to ignore local rules of court.

We affirm the trial court's entry of judgment on the marital settlement agreement, but do so because rule 30.7 cannot impose requirements for enforcement of mediated settlement agreements in addition to those specified by statute. (Evid. Code, § 1123; § 2550; Code Civ. Proc., § 664.6.)

## III

### *Due Process Challenge*

Clark contends his due process rights were violated at trial because the court disallowed him a full and fair opportunity to present his case. Specifically, Clark complains that time constraints imposed by the court did not allow him the opportunity to present all relevant evidence. We are not persuaded.

### A.

### *The Right to a Full and Fair Hearing*

In *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281 (*Carlsson*), this court noted that "'[i]t is a cardinal principle of our jurisprudence that a party should not be bound or concluded by a judgment unless he [or she] has had his [or her] day in court. This means that a party must be duly cited to appear and afforded an opportunity to be heard and to offer evidence at such hearing in support of his [or her] contentions. [¶] His [or her] right to a hearing does not depend upon the will, caprice or discretion of the trial judge who is to make a decision upon the issues. [¶] An order or judgment without such an opportunity is lacking in all the attributes of a judicial determination. [Citations.] [¶] Refusal to permit counsel . . . to present evidence and make a reasonable argument in

19

support of his [or her] client's position [i]s not a mere error in procedure. It amount[s] to a deprival of a substantial statutory right. . . .' (*Spector v. Superior Court* (1961) 55 Cal.2d 839, 843–844 (*Spector*).)" (*Id.* at p. 284.)

*Carlsson* involved "an unusual and perhaps unprecedented fact situation" in which "the family law judge suddenly declared an end to the trial before the husband had finished putting on his case-in-chief. After displaying impatience and reluctance in allowing the parties adequate time to complete their presentations, the judge ended the trial while an expert witness for the husband was on the witness stand and counsel was in the midst of asking him a question." (*Carlsson*, *supra*, 163 Cal.App.4th at p. 284.) As a result, we concluded the trial court deprived the husband of his due process rights to a full and fair hearing. (*Ibid.*)

## B.

### *Clark Identified No Additional Witnesses or Evidence he Wished to Introduce*

Clark seeks to avail himself of our holding in *Carlsson* by arguing this case presents the same sort of due process violation that results when a court prevents a litigant from fully presenting his or her case. To this end, Clark points out he was unable to call any witnesses even though they were present at the courthouse during trial, the court pressured him to finish his case by 4:00 p.m., and his lack of opportunity to present rebuttal evidence.

The record does not reveal a violation of Clark's due process rights. This case markedly differs from the situation in *Carlsson.* Here, the trial court remained in session until the parties finished presenting their cases and they agreed on a briefing schedule for their closing arguments.

The record of trial shows Clark testified on his own behalf and was cross-examined by Anna's counsel. Clark, representing himself, in turn cross-examined Anna. Clark called as a witness the court-appointed custody mediator, Jack D. Love.

20

In the middle of the one-day trial, Clark remarked to the court: "We have a lot of testimony to rebut that I believe is very important and *possibly some* –- you know, a witness or two, just some key points." (Italics added.) Clark did not identify the witnesses or make an offer of proof as to what the witnesses would testify about if called.

Near the end of trial, Clark resumed the witness stand and provided testimony, in narrative form, that encompasses 41 pages of the reporter's transcript. He did so without objection from opposing counsel. At the end of his testimony, he stated: "That's it."

After being cross-examined by opposing counsel, Clark did ask: "Can I address these things, Your Honor?" The court noted the late hour and that Clark had received more time to present his case than originally planned. Clark did not object to the end of the evidentiary portion of the trial. Again, Clark made no offer of proof as to any point he wished to address by his own or any other witness's testimony. Instead, Clark agreed to a briefing schedule in which the parties would submit their closing arguments in writing. Trial concluded without objection by Clark.

While the parties and the trial court were concerned about time constraints for the trial, which had been scheduled for one day, Clark did not identify any witnesses he sought to call and he did not make any offers of proof as to any evidence he would have introduced if given the opportunity. Indeed, Clark's closing argument repeatedly drew on the testimony at trial in advancing his contentions.

Evidence Code section 354 precludes reversal for exclusion of evidence in the absence of an offer of proof by providing: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice *and* it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with

21

subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination." (Italics added.) Failure to make a proper offer of proof precludes appellate consideration of an argument about wrongly excluded evidence. (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 329.)

For lack of an offer of proof regarding any improperly excluded evidence, Clark's argument has not been preserved for appeal. (*Bowman v. Wyatt*, *supra*, 186 Cal.App.4th at p. 329.) We note that even on appeal, Clark's assertion that there was a "lack of sufficient time to introduce all relevant evidence" is unaccompanied by any indication of what evidence he believes should have been admitted.

Clark asserts an offer of proof is not required if an entire class of evidence is excluded or if such offer would be futile. The assertion does not help him. As this court has previously explained, " '[w]here an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal . . . .' " (*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1142, quoting *Beneficial, etc., Ins. Co. v. Kurt Hitke & Co.* (1956) 46 Cal.2d 517, 522.)

Here, Clark does not identify any ruling in which the trial court declared a category of evidence inadmissible. Indeed, Clark cannot identify any evidence he wanted to –- but was prevented –- from introducing into evidence. Clark did not object to the close of evidence. His agreement with the post-trial briefing schedule signaled to the trial court that he was ready to move on to arguing the significance of the evidence.

Based on the record, the trial court did not deprive Clark of due process of law.

## IV

### *Further Mediation or Arbitration*

Clark contends the trial court erred by entering judgment on the marital settlement agreement rather than ordering the parties to engage in further mediation or arbitration. We disagree.

### A.

### *Clark Did Not Request Arbitration or Further Mediation*

Paragraph eight of the marital settlement agreement between Clark and Anna provides, in pertinent part:  "We agree that any dispute with Live at Peace Ministries, any conciliator, or any participant arising from or related to this agreement shall be settled by mediation and, if necessary, legally binding arbitration in accordance with the *Rules of Procedure for Christian Conciliation* promulgated by the Institute for Christian Conciliation, a division of Peacemaker® Ministries.  Judgment upon an arbitration decision may be entered in any court of competent jurisdiction.  The undersigned understand that these methods shall be the sole remedy for any controversy or claim arising out of this agreement and expressly waive their right to file a lawsuit against the Live at Peace Ministries, any conciliator, or one another for such disputes, except as necessary to enforce an arbitration decision."  (Fn. omitted.)

Anna's motion to enter judgment on the marital settlement agreement sought to enforce rather than dispute its terms.  Only when Clark opposed her motion for entry of judgment did he inject a disagreement as to the validity of the agreement.

Clark did not request or move for further mediation or arbitration prior to trial. Instead, Clark proceeded to represent himself at trial and argued that the court should invalidate the marital settlement agreement.

**B.**

***Forfeiture of the Right to Alternative Dispute Resolution***

The California Supreme Court has recognized "no single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195.) Generally, the court determines whether a party has surrendered a right to arbitrate by considering " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*Id.* at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992.)

Clark did not move to compel arbitration or further mediation prior to trial. "That ends the story." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 (*Burton*).) As in *Burton*, the lack of a request for arbitration dooms an appellate claim based on the failure of the trial court to order the parties to participate in alternative dispute resolution. (*Ibid.*) Under any test, voluntarily proceeding to trial in the absence of a request for mediation or arbitration constitutes a relinquishment of any contractual right to avoid trial. (Cf. *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 310-311.) Moreover, the absence even of a request for a ruling on whether arbitration or further mediation was necessary under the agreement constitutes a failure to preserve the issue for appeal. (See *Burton, supra,* 190 Cal.App.4th at p. 946.)

Clark argues he did not forfeit his right to arbitration or further mediation. In so arguing, he relies on the portion of his trial brief in which he referred to paragraph eight, the provision in the marital settlement agreement that required further mediation or arbitration prior to bringing suit on the agreement. The record shows Clark did mention the agreement to engage in further mediation or arbitration in his pretrial briefing. However, he did so only to argue the marital settlement agreement was invalid. His trial briefs did *not* request that trial be stayed in order to first engage in further mediation or arbitration. Thus, Clark did not request further alternative dispute resolution prior to trial. Certainly, he did not petition to compel arbitration under Code of Civil Procedure section 1281.2.[11]

Clark further argues his post-trial briefing constituted an invocation of the right to further mediation or arbitration. His post-trial brief, however, continued to reflect his position that the marital settlement agreement was unenforceable. Indeed, the only request he made in connection with paragraph eight of the agreement was for sanctions against Anna under the Family Code. Specifically, Clark asserted paragraph eight "intimates that judgment may not be entered on a mediation agreement (only on arbitration) and going to court over this [marital settlement agreement] is impossible. *If binding*, the [marital settlement agreement] calls for re-mediation in §8 and would be ground for constructive fraud. In a 5/17/2010 court filing, father requested sanctions pursuant to § 271(a) because of this (§8)."

Clark's post-trial brief did not constitute a request for further mediation or arbitration. For lack of a request or motion to compel further mediation or arbitration,

---

[11] Code of Civil Procedure section 1281.2 provides, in pertinent part that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."

Clark forfeited any contractual right to engage in alternative dispute resolution. (*Burton, supra,* 190 Cal.App.4th at p. 946.)

## V

### *Undue Influence*

In the trial court, Clark argued the marital settlement agreement is unenforceable because the mediator engaged in undue influence during the mediation. On appeal, he changes his argument to assert *Anna* exerted undue influence on him during the mediation. As part of his argument, he asserts Anna gained an unfair division of property because of the mediation. In so arguing, Clark acknowledges the confidentiality extended to mediation proceedings undermines his argument. Elsewhere, Clark even notes he objected to admission of evidence regarding the intent of the parties in entering into the marital settlement agreement "on the basis of mediation confidentiality." We conclude Clark's assertion of undue influence is precluded by the mediation confidentiality imposed by the Evidence Code. In addition, there is no presumption of undue influence in marital settlement agreements reached as a result of mediation.

### A.

### *Mediation Confidentiality*

Evidence Code section 1119, subdivision (a), provides: "No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given." Construing Evidence Code section 1119, the California Supreme Court "conclude[d] that there are no exceptions to the confidentiality of mediation communications or to the statutory limits on the content of mediator's reports. Neither a mediator nor a party may reveal communications made during mediation." (*Foxgate, supra,* 26 Cal.4th at p. 4.) More recently, the Supreme Court held

26

that mediation confidentiality even extends to preclude complaints of deception and coercion brought by a client against his own attorney for the attorney's conduct in connection with a mediation. (*Cassel, supra,* 51 Cal.4th at p. 118.) Accordingly, Clark cannot establish undue influence by Anna or any other participant in the mediation under the mediation confidentiality provisions of Evidence Code section 1119.

**B.**

*Presumption of Undue Influence*

Rather than attempting to introduce evidence showing Anna actually engaged in undue influence during the mediation, Clark resorts to the rule that " '[w]hen an interspousal transaction advantages one spouse, "[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence." ' " (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 84 (*Kieturakis*), quoting *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 293.) To this end, Clark parses the division of property in the marital settlement agreement to assert Anna got a better deal. On this basis, Clark asserts Anna had the burden of disproving undue influence in the mediation that led to the purportedly unfair agreement. We disagree.

In *Kieturakis*, the Court of Appeal held that marital settlement agreements produced as a result of mediation cannot be presumed to be the product of undue influence. (138 Cal.App.4th at p. 85.) As the *Kieturakis* court explained, " 'Voluntary participation and self-determination are fundamental principles of mediation. . . .' (Advisory Com. com., Cal. Rules of Court, rule 1620.3; see also, e.g., *Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1139 [concept of self-determination is critical to mediation process]; *Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 270 [same].) It can thus be expected that most mediators would . . . consider it their duty to attempt to determine whether the parties are 'acting under their own free will' in the mediation. '[P]ower imbalance[s] between spouses' are a recognized concern when family matters are mediated. (Knight et al., Cal. Practice

27

Guide:  Alternative Dispute Resolution (The Rutter Group 2004) ¶ 3:516, p. 3–81 (rev. # 1, 1996), italics omitted) [spouse who is overbearing or dominates conversation may have advantage].)  Therefore, '[d]ivorce mediators generally work to balance the negotiating power between the parties.  This tends to produce agreements that are more fair and voluntary, rather than coerced.'  (Roth et al., The Alternative Dispute Resolution Practice Guide (2005) § 31:5, p. 31–5.)  Thus, while mediation is no guarantee against the exercise of undue influence, it should help to minimize unfairness in the process by which a marital settlement agreement is reached.

"Even more importantly, to apply the presumption of undue influence to mediated marital settlements would severely undermine the practice of mediating such agreements.  Application of the presumption would turn the shield of mediation confidentiality into a sword by which any unequal agreement could be invalidated.  We do not believe that the Legislature could have intended that result when it provided for spousal fiduciary duties on the one hand and for mediation confidentiality on the other." (*Kieturakis*, *supra*, 138 Cal.App.4th at p. 85.)

Clark contends *Kieturakis* was incorrectly decided but offers no explanation as to how that decision might err.  In addition to urging us to reject the holding in *Kieturakis,* Clark also attempts to distinguish that case by noting it involved a marital settlement agreement that expressly stated it was not the product of undue influence.  (*Kieturakis*, *supra*, 138 Cal.App.4th at p. 64.)  Clark notes the marital settlement agreement in this case contains no declaration that it was free from undue influence.  This is a distinction without a difference.

As *Kieturakis*'s survey of mediation authority shows, mediators strive to render negotiations fair and voluntary.  (*Kieturakis, supra,* 138 Cal.App.4th at p. 85.)  Combined with the mediation confidentiality that Evidence Code section 1119 imposes, a presumption of undue influence undermines the strong public policy in favor of mediation.  (*Id.* at pp. 85-86.)  The Legislature has already addressed the requirements of

admissible mediated agreements.  (Evid. Code, § 1123.)  It is not our province to impose a new requirement that mediated agreements must declare they are free from undue influence if they are to be valid.  (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 711.)

We also reject Clark's assertion that the mediation yielded an agreement that resulted in an unfair division of property favoring Anna.  It is well settled that parties may agree in writing to an unequal division of marital property.  (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 90.)  Moreover, crediting Clark's argument would implicate the *Kieturakis* court's concern that "[m]any mediated settlements might be jeopardized because relatively few of them, upon close scrutiny, would likely be found to have been perfectly equal.  [¶]  To countenance that result would contravene the strong legislative and judicial policies favoring mediation and settlement.  (Code Civ. Proc., § 1775, subd. (c) [mediation may help reduce courts' caseloads; public interest dictates that mediation 'be encouraged and used where appropriate by the courts']; Bus. & Prof. Code, § 465, subd. (b) [greater use of mediation should be encouraged]; *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415 [policy favoring mediation]; *Stewart v. Preston Pipeline Inc., supra,* 134 Cal.App.4th at p. 1583 [policies favoring mediation and settlement]; *In re Marriage of Friedman* (2002) 100 Cal.App.4th 65, 72 [it is 'well settled that property settlement agreements occupy a favored position in California'].)"  (*Kieturakis*, *supra*, 138 Cal.App.4th at p. 86.)

Accordingly, we reject Clark's undue influence argument.  As Clark acknowledges, the mediation confidentiality provisions of Evidence Code section 1119 protect the mediation process and preclude any claim of undue influence.  Further, there is no presumption of undue influence in marital settlement agreements reached as a result of mediation.

## VI

### *Deceit*

Clark contends that "the trial court did not properly rule on the issue of deceit." Specifically, he asserts the court failed to respond to his argument that "Anna deceived him by luring him to California under the guise of working on reconciliation, when she obviously had no intention of reconciling given that the date of separation was April 30, 2009 -— almost four months earlier." We deem the contention forfeited.

Clark's argument cites no legal authority other than *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448 and *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730 -– both cited as authority for determining the date of separation. Clark provides no legal authority supporting his argument that the trial court did not properly rule on the issue of deceit.[12]

Clark also provides no authority to support the proposition that motive for engaging in mediation is even relevant in assessing the validity of a mediated agreement. (But see *Cassel, supra*, 51 Cal.4th at pp. 117, 118 [Evidence Code section 1119 precludes admissibility of any evidence regarding tactics employed in connection with the mediation, including coercion and deception].) However, "[t]o demonstrate error,

---

[12]    As Clark acknowledges, the trial court *did* respond to Clark's assertion of deceit in its tentative decision, by stating:  "The court finds that [Clark's] purpose in engaging in mediation was to achieve reconciliation with [Anna] and that as a result he and [Anna] would resume their marital relationship.  [Anna's] motive was less clear.  [Clark's] position appears to be that [Anna] never intended to reconcile and that she somehow fraudulently induced him to engage in mediation.  That assertion ignores the fact that he is the one who initiated the mediation process and that he remained and continued to mediate and arrived at a settlement even after it became apparent that he was not going to be successful in achieving his initial goal.  The Court rejects [Clark's] suggestion that he was fraudulently induced to enter into the Settlement Agreement."

In light of our conclusion that Clark has forfeited the issue, we need not determine whether the trial court "inadvertently misconstrued" his argument regarding deceit.

appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Clark's failure to provide any legal authority that supports his argument forfeits the contention on appeal. (*Id.* at p. 408; see also *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647.)

## VII

### *Custody and Visitation*

Clark contends the trial court erred by awarding primary physical custody to Anna. Clark argues this is a "move-away" case in which the trial court employed the wrong legal standard for determining custody. He also asserts the custody and visitation order disallows him from having frequent and continuing contact with his children. We conclude the trial court did not abuse its discretion in making its custody and visitation orders.

### A.

### *Agreement and Subsequent Order on Custody*

The marital settlement agreement in this case showed Anna and Clark agreed on issues of custody and visitation as follows: "1. [¶] . . . [¶] c. The children will be living with Anna in Sacramento while Clark resides in St. Louis, likely through December [2009]. [¶] . . . [¶] g. Clark and Anna agreed that the children will live with Anna if and when Clark moves to Sacramento. With Anna's renewed trust, Clark will have the children every other weekend and one evening a month during the school year. Anna will have the children the first and last weeks of the summer and Clark will have them for the remainder of the summer. [¶] h. Should Clark remain in St. Louis, it is possible for him to come to Sacramento once a month for a weekend with the children and bring the children to St. Louis for time in the summer. [¶] . . . [¶] k. For 2009, Anna and Clark

31

agree that Clark can have the children for the week of Thanksgiving. Clark will take one leg of flying with the kids and Anna will take the other. Christmas will be spent with Anna. Subsequent years will be alternating."

At trial, however, Clark sought to become the primary caregiver to the children in Missouri. At the time the children were residing with Anna in California.

The trial court's tentative decision states: "Before discussing those factors upon which the Court relied to determine what is in the Minor Children's best interests it is important to discuss [Clark's] insistence that this case be treated as a 'move away case' and thus governed by the principles enunciated [in] *In re Marriage of Burgess* (1996) 13 Cal.4th 25 and its progeny. His position is grounded in his belief that [Anna] moved from Missouri to California in order to impede his ability to be involved with the Minor Children, and that consequently he should be the primary caretaker. The Court does not necessarily agree that this case should be regarded as a 'move away' case, however, whether [Anna's] motive in moving away should be considered in light of *Burgess* or whether it should be considered as a factor pursuant to . . . section 3040(a)(1) its relevance depends upon the Court finding [Anna's] motive in moving to have been to thwart [Clark's] right to parent his children. As mentioned above the Court finds that [Anna's] move to California was not motivated by a desire to interfere with any of [Clark's] parental rights but was precipitated by [his] failure to deal with his use of pornography. In coming to the Placer County area [Anna] was returning home, the only place where she has immediate and extended family. In determining what the best interests of the Minor Children are the following was considered: In one of their sessions with the mediator[13] the parties were asked to describe what they regarded as their

---

**13** Here, the trial court referred to the court-ordered mediation with Jack D. Love that ultimately yielded a report with recommendations that was admitted into evidence during trial. In family law cases, "[m]ediation of custody issues is mandatory. (. . . § 3170,

32

parental responsibilities, it was clear from both of their descriptions that [Anna] was the primary care-taker. She took care of meals, homework, attended games and practices, got them ready for bed, said goodnight. [Clark] reported being involved but not nearly to the extent that [Anna] was.

"As another part of the mediation process the mediator observed the interaction between the Minor Children and the respective parties. When observing the children interact with [Anna] he reported that 'Both children were observed to be calm and happy. They were noticeably more cooperative with mother, and with each other then (sic) when observed with father.' As part of the mediation process the children's teachers were contacted, and although Grant's teacher thought Grant might benefit from counseling, the

---

subd. (a).) The report of a mediator in a custody case is 'evidence to be weighed with all other evidence. . . .' (*In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1104, disapproved on another point in *In re Marriage of Burgess, supra,* 13 Cal.4th 25, 38, fn. 10.)" (*In re Marriage of Slayton & Biggums-Slayton* (2001) 86 Cal.App.4th 653, 659.)

The "mediation" contemplated by the Family Code for resolution of custody issues differs from the mediations governed by Evidence Code sections 1115 through 1128. Although a custody mediation begins as a confidential process designed to help parties reach a mutually acceptable agreement (*In re Marriage of Green* (1989) 213 Cal.App.3d 14, 25), it turns into an evaluation if the parties are unable to reach agreement. "When the mediator is authorized to submit written recommendations pursuant to § 3183(a) . . . , the mediation and recommendation process 'shall be referred to as "*child custody recommending counseling*" and the mediator shall be referred to as a "*child custody recommending counselor.*"' In that capacity, however, the 'counselors' are still considered *mediators* for purposes of . . . § 3160 et seq. (governing child custody/visitation mediation) and are subject to 'all requirements for mediators for all purposes' under the Family Code and [California Rules of Court]. [§ 3183(a) (emphasis added).]" (Hogoboom & King, Cal. Practice Guide: Family Law (Rev. #1 2011) § 7:211, p. 7-73.)

Here, the trial court referred to Love as the mediator and the session as "mediation" even though the process turned into a child custody recommending counseling session.

We note Clark does not challenge the admissibility of Love's report or his testimony at trial.

teachers both reported that the children were doing fine in school and get along well with their peers. The children were also interviewed; they reported a regular routine at home and that they have friends with whom they enjoy playing. [Clark] correctly points out that one of the factors the Court shall consider in making a custody determination is 'which parent is likely to allow the child frequent and continuing contact with the noncustodial parent' (. . . section 3040(a)(1)[)]. [Clark] then chronicles those occasions when he believes that [Anna] wrongfully disputed and/or denied or limited visitation. [Clark's] right to be with his children is extensive, but is not limitless, the Court finds [Anna] was attempting to set reasonable limits, not wrongfully deny [Clark] the right to be with his children. The order set forth herein defines the parties' parenting time, the Court anticipates that neither parent will interfere with the other's parenting rights as set forth in that order.

"As mentioned above it is clear that [Anna], first in California, and then in Missouri and now back in California has been the Minor Children's primary caretaker, the children appear to be happy, healthy and well-adjusted. Given the importance of stability and continuity in the Minor Children's lives the Court has determined that it is in their best interests that [Anna] be their primary caretaker."

Based on these findings, the trial court awarded joint legal and physical custody to Anna and Clark. The trial court also provided a schedule for the sharing of physical custody as recommended by Love.

## B.

### *Initial Custody Determinations*

The California Supreme Court has explained that "[i]n an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (. . . § 3040, subd. (b).) It must look to *all the circumstances* bearing on the best interest of the minor child. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 534.) . . . section 3011 lists specific factors, 'among others,' that the trial

34

court must consider in determining the 'best interest' of the child in a proceeding to determine custody and visitation: '(a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent against the child or against the other parent . . . . [¶] (c) The nature and amount of contact with both parents.' " (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32 *(Burgess)*.)

The standard for an initial custody determination differs from a situation in which a parent, who has received custody by prior court order, seeks to move away. "The trial court is always bound to make a custody decision based upon the child's best interest. But depending upon the posture of the case, the trial court will use either the 'best interest' analysis or the 'changed circumstances' analysis. *The best interest analysis is used when making a permanent custody determination initially.*" (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996 (*Ragghanti*), italics added.)

In a move-away case, "[t]he changed circumstances test requires a threshold showing of detriment before a court may modify *an existing final custody order* that was previously based upon the child's best interest. The rule is based upon principles of res judicata. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.) In these cases, 'a child should not be removed from prior custody of one parent and given to the other " 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' " ' (*Burgess, supra,* 13 Cal.4th at p. 38, quoting *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730.)" (*Ragghanti*, *supra,* 123 Cal.App.4th at p. 996, italics added.)

In reviewing a custody order, "[t]he standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. (*Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 208.) The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis

35

was actually invoked.  (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)"
(*Burgess*, *supra*, 13 Cal.4th 25, 32.)

Here, the judgment constitutes an initial custody determination.  Although Clark and Anna agreed to a visitation schedule in their marital settlement agreement at the end of August 2009 and again in an October 2009 stipulation, neither stipulation constituted a court order on custody.  Consequently, the judgment constituted the initial custody determination.  For lack of a prior custody order, the move-away standard articulated in *Burgess* does not apply to this case.  (*Burgess*, *supra*, 13 Cal.4th at pp. 31-32.)  Instead, the trial court was required to make the initial custody determination based on the best interests of the children.  (*Ibid.*)  As the trial court's tentative decision shows, the court carefully weighed all of the factors informing the best interests of the children.  Accordingly, we reject Clark's argument that the trial court erred in failing to employ the detriment test that is applicable to move-away cases with prior custody orders.

## C.

### *Frequent and Continuing Contact with the Children*

Clark contends the trial court thwarted his right to frequent and continuing contact with his children because "it gave Clark only 6 or 7 weeks a year [to visit or have them stay with him], depending on Thanksgiving."  We find no abuse of discretion in the trial court's custody determination or its schedule of visitation.

The trial court has broad discretion in custody and visitation matters.  As explained by the California Supreme Court, "[t]he Family Code specifically refrains from establishing a preference or presumption in favor of *any* arrangement for custody and visitation.  Thus, . . . section 3040, subdivision (b), provides:  'This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but *allows the court and the family the widest discretion* to choose a parenting plan that is in the best interest of the child.'  (Italics added.)  Similarly, although . . . section 3020 refers to 'frequent and continuous contact,' it does

36

not purport to define the phrase 'frequent and continuous' or to specify a preference for any particular form of 'contact.' Nor does it include any specific means of effecting the policy, apart from 'encourag[ing] parents to share the rights and responsibilities of child rearing.' (*Ibid.*)" (*Burgess*, *supra*, 13 Cal.4th at pp. 34-35.)

We begin by noting the custody and visitation ordered in the judgment potentially allows Clark as many as 10 or 11 weeks with the children each year as follows: a week during spring break, four days for Thanksgiving in even years, a week during Christmas, 30 days during summer, and as many as 30 days in Anna's community of residence. Additional communication by telephone and Web cameras is encouraged. The schedule of custody and visitation was adopted based on the recommendations of Love, who testified as follows:

"Q. [W]ould you consider the long-distance parenting plan to provide Clark with significant periods of physical custody?

"A. Given the fact that the children are in school here [in California], yes."

The trial court did not abuse its discretion in adopting Love's recommendations for custody and visitation. In so concluding, we reject Clark's comparison of the numerical days of custody awarded in *In re Marriage of Bryant* (2001) 91 Cal.App.4th 789 (*Bryant*) and *In re Marriage of Condon* (1998) 62 Cal.App.4th 533 (*Condon*). Neither case requires reversal of the judgment entered in the present action. To the contrary, both *Bryant* and *Condon* provide support for the deference given to trial courts in difficult cases in which parents end up living far from each other and both parents wish to remain integral parts of their children's lives.

In *Bryant*, the appellate court affirmed the superior court's order that the children, who were to reside primarily with mother, spend 10 weeks with father along with as many weekends as he desired. (*Bryant, supra,* 91 Cal.App.4th at p. 793.) In affirming, *Bryant* reiterated that the trial court has very broad discretion to craft a parenting plan in the best interests of the children. (*Ibid.*) Even so, the *Bryant* court empathized: "From

37

[father's] point of view, it may be unfair that because he provided primary financial support for his family he had less contact with his children. But the question presented to the trial court is the best interest of the children, not fairness to [father]. Unfortunately where, as here, both parents are competent and loving, there is frequently no solution that is fair to everyone involved." (*Bryant*, *supra*, 91 Cal.App.4th at p. 794.) Nonetheless, the lack of options for a custody order that could be satisfactory to both parents did not warrant reversal of the judgment. (*Ibid.*)

*Condon* involved a move-away in which the superior court granted mother permission to move back to Australia with the children, the place of their birth. (*Condon, supra,* 62 Cal.App.4th at p. 539.) In *Condon,* the trial court made "herculean efforts to fairly balance the factors" bearing on the children's best interests and allowed the move even though the factors "only slightly favor[ed]" the children's move. (*Id.* at pp. 539, 549.) In affirming, the *Condon* court noted that review of an abuse of discretion does not involve the question of whether the appellate court agrees with the trial court's determination, but only whether the trial court acted in a manner that exceeded the limits of permissible options. Thus, *Condon* notes, "While we are not certain the members of this court would have permitted this relocation, given the implications for the relationship between father and children, we conclude under the prevailing standard of review the substantive terms of the trial court's order fall within the permissible span of that court's discretion." (*Condon*, *supra*, 62 Cal.App.4th at p. 549.) Although the exact amount of time awarded to father in *Condon* is not clear —- seemingly 48 days of the children's vacation time plus up to 15 days per month in Australia if father traveled —- the holding is clear: a trial court's best efforts to fashion a custody and visitation schedule cannot be reversed simply because no ideal solution exists. (*Id.* at pp. 540, fn. 5, 549.)

We recognize the challenges presented to Clark by the distance and financial resources necessary to spend time with his children. We note that Clark dedicates a section of his briefing to explaining that he "does not have the funds to maintain contact."

38

On this point, he complains that "the trial court made *no* finding with respect to Clark's financial ability to maintain 'frequent and continuing contact' with his children and did not even explore this issue." Even though he cites no authority to establish the lack of such finding as error, he concludes his lack of funds should have made him the choice to become the primary caregiver for the children.

Giving Clark primary physical custody of the children would have meant removing them from the parent who "took care of meals, homework, attended games and practices, got them ready for bed, said goodnight." The trial court did not abuse its discretion by allowing the children to remain primarily with Anna. As the Supreme Court has "repeatedly emphasized, the paramount need for continuity and stability in custody arrangements -— and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker -— weigh heavily in favor of maintaining ongoing custody arrangements." (*Burgess*, *supra*, 13 Cal.4th at pp. 32-33.) Thus, the question becomes one of the reasonability of time awarded to Clark.

As our review of *Bryant* and *Condon* shows, parents who are geographically distant from their children may receive custody awards that are unsatisfying but nonetheless legally permissible. As Love testified, the schedule of custody and visitation represented an effort to balance the reality of young children who attend school in California and a father who resides in Missouri. Although the custody and visitation orders in this case are undoubtedly unsatisfying to Clark, it does not represent an abuse of discretion. Accordingly, we will not disturb the trial court's exercise of discretion in making the custody and visitation orders in its judgment.

# VIII

## *Clark's Objections to the Tentative Ruling*

Clark contends "[t]he trial court erred in not taking [his] objections/response to the tentative ruling into account before entering judgment." Clark further argues that "the Judgment entered was not the same as the tentative decision." We reject the contentions.

## A.

## *Requirements for a Statement of Decision*

Upon timely request by a party in a trial without a jury, the court must issue "a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.) If a party believes the statement of decision "does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663," Code of Civil Procedure section 634 provides that "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."

"Sections 632 and 634 of the Code of Civil Procedure have been interpreted to mean that a statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case. (E.g., *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500.) When this rule is applied, the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim. (E.g., *Yield Dynamics, Inc. v. Tea Systems Corp.* (2007) 154 Cal.App.4th 547, 559.) Ultimate facts are distinguished from evidentiary facts and from legal conclusions. (*Ibid.; Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67, 76.)" (*Central Valley General Hosp. v. Smith* (2008) 162 Cal.App.4th 501, 513, fn. omitted.)

Although a party may object to the statement of decision by raising numerous points of contention, the trial court is not required to respond point by point. "The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case. (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 525; *Republic Indemnity Co. v. Empire Builders Corp.* (1985) 167 Cal.App.3d 1163, 1167.)" (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379-1380.) A statement of decision is "*not* required to address how it resolved intermediate evidentiary conflicts, or respond point by point to the various issues posed in appellant's request for a statement of decision." (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125-1126.)

## B.

### *The Trial Court's Statement of Decision*

In this case, Anna requested a statement of decision at the beginning of trial. In response, the trial court issued a 14-page tentative decision that served as its statement of decision. The statement of decision made findings of fact including dates of marriage and separation, birthdates of the children, the parties' history in California and Missouri, the impetus for the separation, and the events culminating in the marital settlement agreement in August 2009. The statement of decision further found the marital settlement agreement was valid and enforceable, and provided for custody and visitation with a detailed schedule for the children. Thus, the statement of decision resolved the issues set for trial: (1) whether judgment could be entered on the marital settlement agreement under Code of Civil Procedure section 664.6, (2) date of separation, and (3) custody and visitation for the parties' children.

Clark now contends the statement of decision did not adequately respond to his post-trial objections. It appears he asserts error on grounds that the "trial court did not take these papers into account; it did not respond to any of the controverted issues, and it

41

signed the Judgment proposed by Anna's attorney, which stated that no documents specifying controverted issues had been filed."

The trial court's failure to directly respond to Clark's 23-page "reply to tentative decision" by itself does not constitute error. With an adequate statement of decision, the trial court need not issue any further response. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1530.)

On appeal, Clark bears the burden to identify in his opening brief the specific error and how that error caused a miscarriage of justice. (*Paterno, supra,* 74 Cal.App.4th at p. 106.) Clark does not attempt to show the specific ways in which the statement of decision was inadequate. For example, he points out no omitted issue of ultimate fact –- such as custody, date of separation, validity of the marital settlement agreement –- to support his argument. Clark has failed to meet his burden that the trial court's response was inadequate to his objections regarding the statement of decision.

Although Clark correctly notes an error in the trial court's judgment insofar as it states no documents specifying controverted issues were received, he does not identify any prejudice. In other words, Clark has not met his burden to show he would have received a more favorable judgment in the absence of the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

Finally, we address Clark's contention that the trial court somehow erred by adopting a judgment that differed from the tentative decision. Tellingly, Clark offers no authority in support of his assertion. We conclude there is no error because "a trial court retains inherent authority to change its decision, its findings of fact, or its conclusions of law at any time before entry of judgment and then, the judgment supersedes any memorandum or tentative decision or any oral comments from the bench. (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156–1157; *Taormino v. Denny* [(1970)] 1 Cal.3d [679,] 684.) . . . Absent contrary indication in the final judgment or statement of decision, the appellate court will assume that, during the period before rendition of

42

judgment, the trial court realized any error and corrected it.  (*Oldis v. La Societe Francaise de Bienfaisance Mutuelle* (1955) 130 Cal.App.2d 461, 472.)"  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.)

The trial court did not err in issuing its statement of decision or entering judgment.

DISPOSITION

The judgment is affirmed.  Respondent Anna Woolsey shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                              HOCH          , J.



I concur:



      HULL          , Acting P. J.

MURRAY, J.

I concur in the result.

I write separately because I disagree with the majority's analysis in section II of the Discussion, in which the majority invalidates a local rule of court in its entirety.

The majority invalidates Placer Superior Court local rule 30.7, which provides that no marital settlement agreement (MSA) involving an unrepresented litigant "will be approved" unless the unrepresented party's signature is notarized or acknowledged by the clerk,[1] and the signature appears below the following notice: "The undersigned party has been advised to consult an attorney regarding the subject matter of this agreement, but has declined to do so."[2] Clark contends the written MSA is invalid because it does not meet these requirements. In cursory briefing concerning the validity of the rule, consisting of a single sentence that essentially mirrors the cryptic argument advanced in the trial court,[3] Anna contends that the local rule is invalid because a single requirement of the rule -- the notary requirement -- *conflicts with* Code of Civil Procedure section 664.6. The majority, on the other hand, concludes that the local rule is invalid because it imposes two requirements -- the notary and right to counsel admonition

---

[1] The rule provides these two means of verifying that signatures on a written agreement are, in fact, those of the parties. I shall refer to the both means collectively as "the notary requirement."

[2] I shall refer to this requirement as "the right to counsel admonition."

[3] Under the heading in Anna's brief, "AN AGREEMENT NEED NOT BE NOTORIZED TO BE ENFORCEABLE," Anna's entire argument on this issue on appeal is, "The local rule is in conflict with CCP 664.6 and must yield to it. *Elkin* [*sic*] *v. Superior Court* (2007) 41 Cal.4th 1337, 1351."

  Anna's argument in the trial court concerning the validity of local rule 30.7 was set forth in her written closing argument after hearing. The entire argument reads, "The local rule requiring notarization or attorney signature conflicts with CCP 664.6 and must yield to it." (*Elkin* [*sic*] *v. Superior Court* (2007) 41 Cal.4th 1337, 1351."

1

requirements -- which are *in addition to* procedures in Family Code section 2550, Code of Civil Procedure section 664.6 and Evidence Code section 1123. (Maj. opn., pp. 11-12, 17-19.)

I conclude that it is unnecessary to reach the validity of the rule, because the trial court impliedly found that the interest of justice requires that the rule not be applied here. Furthermore, the notary requirement is not inconsistent with statute; rather, it advances the statutory purposes. I decline to address the right to counsel admonition requirement, because it was not asserted as a ground for invalidating the rule by Anna in the trial court, so the trial court could be given an opportunity to rule on the issue, and it was not asserted by Anna on appeal.

## I. Excusing Noncompliance with a Local Rule of Court

Clark complains that "[u]nder the plain language of Local Rule 30.7, the trial court had no authority to approve the [MSA] or the provisions therein," and the trial court violated the rule by entering a judgment based on an MSA that does not comply with the rule.

Our high court long ago observed, "Rules of Court should be framed in furtherance of justice; but they may sometimes, if strictly adhered to, work the other way. They are always under the control of the Court, and if there is any reason to apprehend the latter result, they should be made to yield to the superior calls of justice." (*People v. Williams* (1867) 32 Cal. 280, 287.) Thus, "it is always in the power of the court to suspend its own rules, or to except a particular case from their operation, whenever the purposes of justice require." (*Adams v. Sharp* (1964) 61 Cal.2d 775, 777.)

The Supreme Court has never retreated from this view. To the contrary, the rule was reinforced in *Mann v. Cracchiolo* (1985) 38 Cal.3d 18 (*Mann*). In *Mann*, our high court concluded that, under the circumstances of that case, the trial court abused its discretion by applying a local rule of court to reject a declaration filed in opposition to a summary judgment motion on the ground that it was not filed within the time period set

2

forth in a local rule. (*Mann*, *supra*, 38 Cal.3d at p. 28.) In concluding that the trial court abused its discretion, our high court cited and discussed *Kapitanski v. Von's Grocery Co.* (1983) 146 Cal.App.3d 29. Faced with a similar issue, the *Kapitanski* court noted, "Rigid rule following is not always consistent with a court's function to see that justice is done." (*Kapitanski*, *supra*, 146 Cal.App.3d at p. 32.) Our high court repeated its observations from *Mann* and the quoted language from *Kapitanski* in *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351, 1364 (*Elkins*). Other courts have followed the rule that courts may suspend or except cases from the requirements of local rules when it is in the interest of justice to do so. (See *Estate of Cattalini* (1979) 97 Cal.App.3d 366, 371; 2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 207, Power of Court to Deviate.)[4] This principle appears well settled.

I would apply this venerable principle here. I conclude that the trial court had the authority to excuse noncompliance with local rule 30.7 because it was in the obvious interests of justice to do so. Indeed, similar to *Mann*, under the circumstances of this case, it would have been an abuse of discretion for the trial court to apply the local rule to invalidate the MSA. There was no dispute as to whether each party signed the MSA; to the contrary, both parties acknowledged that the signatures on the MSA were theirs. Thus, as the trial court noted, the purpose of the notary requirement -- to establish that the signatures are genuine -- was fulfilled. Further, the Rules of Procedure for Christian Conciliation required that the parties be advised of their right to counsel, and that was done here before the parties entered into the agreement.

In my view, the trial court's ruling is appropriately affirmed on this basis. We need not reach the underbriefed issue of the validity of the local rule.

---

[4] See also *Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1121-1122 [noncompliance with California Rule of Court was not reversible where there was no prejudice shown and the failure to comply did not work an injustice].)

3

## II.  Validity of Local Rule of Court 30.7

Anna contends that the notary requirement in local rule 30.7 conflicts with Code of Civil Procedure section 664.6.  (See fn. 7, *post*.)  As in the trial court, no other theories for invalidating the rule have been advanced in Anna's appellate briefing; she does not cite other portions of the rule which purportedly conflict with the statute and she cites no other statutes.[5]

Government Code section 68070, subdivision (a) authorizes local courts to establish rules that are "not *inconsistent*" with statute.  Accordingly, "local courts may not create their own rules of evidence and procedure *in conflict* with statewide statutes." (*Elkins*, *supra*, 41 Cal.4th at p. 1352, italics added.)

However, our high court long ago observed in *Butterfield v. Butterfield* (1934) 1 Cal.2d 227 (*Butterfield*), "the mere fact that the rule goes beyond the statutory provision does not make it inconsistent therewith."  (*Butterfield*, *supra*, at p. 228.) The *Butterfield* court upheld a local rule requiring points and authorities supporting change of venue motions, reasoning that the rule was "a reasonable provision in furtherance of the statutory purpose."  (*Ibid*.)  Thus, as *Butterfield* illustrates, a local rule can impose requirements *in addition* to statute without being *inconsistent* with statute.

Despite the fact that Anna has contended in this appeal only that the *notary requirement* of the rule *conflicts* with Code of Civil Procedure section 664.6, the majority invalidates local rule 30.7 *in its entirety* on the basis that the rule imposes requirements *in addition* to those set forth in three statutes, two of which were not asserted by Anna:

---

[5]  While Clark points out the right to counsel admonition requirement in his effort to invalidate the MSA based on noncompliance with the rule's requirements, Anna does not assert that that portion of the rule conflicts with statute.  Anna only cites the notary requirement as conflicting with statute.

4

(1) Family Code section 2550,[6] which provides that a court shall divide community property equally, except upon the written agreement or oral stipulation of the parties; (2) Code of Civil Procedure section 664.6,[7] which provides that a court "may" enter judgment pursuant to the terms of a written settlement "signed by the parties" or an oral stipulation before the court; and (3) Evidence Code section 1123, which addresses the admissibility of written mediated settlement agreements.[8] (Maj. opn., p. 12.)

## A. Validity of the Notary Requirement

The majority invalidates local rule 30.7 on the ground that it imposes requirements *in addition to* Family Code section 2550 and Code of Civil Procedure section 664.6.

Family Code section 2550 (see fn. 6, *ante*) begins, "Except upon the written *agreement of the parties*." (Italics added.) Code of Civil Procedure section 664.6 (see fn. 7, *ante*) provides in pertinent part, "If *parties* to pending litigation stipulate, in a writing *signed by the parties . . . .*" (Italics added.) As can be seen by the italicized

---

[6] Family Code section 2550 provides, "Except upon the written agreement *of the parties*, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." (Italics added.)

[7] Code of Civil Procedure section 664.6 provides in pertinent part, "If *parties* to pending litigation stipulate, in a writing *signed by the parties* outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, *may* enter judgment pursuant to the terms of the settlement." (Italics added.)

[8] The majority references Evidence Code section 1123, but does not explain how local rule 30.7 is inconsistent with that statute. (Maj. opn., pp. 16-17.) As Evidence Code section 1123 governs only the admissibility of a written mediated settlement agreement, not a judgment entered pursuant to an agreement, I see no inconsistency with local rule 30.7. The admissibility of a mediated settlement agreement is not affected by local rule 30.7, which applies to the court approving an agreement for purposes of a judgment. Consequently, I will not address Evidence Code section 1123 further here.

language, a necessary predicate to approving a written agreement *of the parties* under Family Code section 2550 and Code of Civil Procedure section 664.6 is the court's finding that *the parties* have, indeed, entered into the written agreement.

As the trial court noted, the purpose of the notary requirement for unrepresented parties in local rule 30.7 is to ensure that the signatures are genuine. This gives the court assurance that an unrepresented party actually agreed to a written settlement and that a signature has not been forged. It also prevents an unrepresented party from seeking to invalidate the agreement by fraudulently claiming not to have been the person who signed the agreement.

In *Butterfield*, a trial court presiding over an action for divorce denied the defendant's motion for change of venue on the ground that the defendant failed to file points and authorities as required by a local rule of court. On appeal, the defendant contended that because the Code of Civil Procedure provision governing venue did not require points and authorities, invoking the local rule against him deprived him of a statutory right. Our high court wrote, "It is true that a rule inconsistent with a statute can have no validity; but *the mere fact that the rule goes beyond the statutory provision does not make it inconsistent therewith*." (*Butterfield*, *supra*, 1 Cal.2d at p. 228, italics added.) The court reasoned, "Appellant had a statutory right to a change of venue *upon a proper showing of grounds therefor; and the rule requiring points and authorities *is a reasonable provision in furtherance of the statutory purpose*. No possible hardship can fall upon the party who must comply with the rule; and appellant makes no claim to that effect." (*Ibid.*, italics added.)

Likewise, parties have the right to a court's acceptance of a written MSA under Family Code section 2550 and also have the right to avail themselves of Code of Civil Procedure section 664.6, but only upon a *proper showing* to the court's satisfaction that both parties have actually agreed to the MSA. It can hardly be argued that either party is entitled to have the court blindly approve an MSA in the absence of a showing that both

6

sides have actually agreed to the written agreement presented to the court. Like the rule in *Butterfield*, the notary requirement in local rule 30.7 goes beyond the statutory provisions, but the rule is not inconsistent with statute. Rather, the rule is a reasonable provision in furtherance of the statutory purpose.

The majority cites several cases related to Family Code section 2550, a statute not identified by Anna in the trial court or on appeal, as in conflict with local rule 30.7. These cases are cited for the proposition that under Family Code section 2550, a trial court "must" accept written or oral stipulations of the parties concerning the division of property, even if the division is lopsided; "[t]he court's 'only role with regard to a *proper stipulated* disposition of marital property is to accept the stipulation and, if requested, to incorporate the disposition into the judgment.' " (*In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201 (*Dellaria*), quoting *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 91, italics added (*Cream*); accord, *Mejia v. Reed* (2003) 31 Cal.4th 657, 666.) However, there is nothing in these cases or in Family Code section 2550 that prevents a court from adopting procedures to ensure that a written document with which it is presented is, in fact, an agreement reached by the parties by requiring that the signatures be notarized. Indeed, the use of the phrase "proper stipulated disposition" in *Cream* and *Dellaria* implies that the court should make a preliminary factual finding before accepting the agreement, at least as to whether the parties have truly signed off on the stipulation.

Similar to Family Code section 2550, the plain language of Code of Civil Procedure section 664.6 (see fn. 7, *ante*) requires the trial court to determine that the parties have agreed to the stipulated resolution. Indeed, the statutory language, "signed by the parties," must be read as a requirement that the trial court assure itself that the written agreement has been signed by both parties. Thus, while Code of Civil Procedure section 664.6 provides an expeditious method of enforcing agreements, the trial court cannot blindly accept the agreement. As the majority

7

notes, " 'The Legislature created [the section 664.6] procedure to benefit not only parties but also the justice system, relieving it of the burden of more time consuming and expensive processes.' (*Provost v. Regents of University of Cal.* (2011) 201 Cal.App.4th 1289, 1298.)" (Maj. opn., p. 16.) Providing conclusive proof of the validity of a party's signature before the court approves the agreement is consistent with the statutory purpose, because it prevents fraud and set-aside motions based on claims of forged signatures and fraudulent claims of forgery.[9]

The majority acknowledges the *Butterfield* rule, which allows courts to enact local rules that go beyond the provisions related to statute as long as any such rule is "a reasonable provision in furtherance of the statutory purpose." (*Butterfield*, *supra*, 1 Cal.2d at p. 228.) But quoting *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 364 (*Trans-Action*), the majority goes on to write, " 'However, if a statute even implicitly or inferentially reflects a legislative choice to require a particular procedure, a rule of court may not deviate from that procedure.' " (Maj. opn., p. 14.) This quote from *Trans-Action* is inapposite here. First, the Legislature has not identified a procedure by which trial courts are to assure themselves that the signatures on MSA's are, in fact, those of the parties. Second, the notary requirement does not *deviate* from Family Code section 2550 or Code of Civil Procedure section 664.6; to the contrary, as I have noted, the rule furthers the statutory purposes of

---

[9] There is a second reason for concluding that local rule 30.7 is not inconsistent with Code of Civil Procedure section 664.6. Unlike Family Law section 2550, a court is not required to accept a stipulated judgment under Code of Civil Procedure section 664.6. Code of Civil Procedure section 664.6 clearly states the court "may" accept the stipulated judgment. (See fn. 7, ante.) A " 'court cannot surrender its duty to see that the judgment to be entered is a just one, nor is the court to act as a mere puppet in the matter.' " (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664.) Thus, for the additional reason that trial courts may reject agreements submitted for approval under Code of Civil Procedure section 664.6, the notary provision is not inconsistent with that statute.

8

those statutes by providing a mechanism for the trial court to determine the parties have agreed to the written agreement presented to the court.

The thrust of the majority's opinion is that local rule 30.7 is invalid because it imposes requirements *in addition to* those required by statute. Invalidating a rule solely on this basis is unprecedented and contrary to statutory and decisional law, which allow local rules that are *not inconsistent with* statute. The ramifications for the rule of law announced by the majority are far reaching. The majority cites two cases for its "in addition to" rule, *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653 (*Hogoboom*) and *Conae v. Conae* (1952) 109 Cal.App.2d 696, 697 (*Conae*).

*Hogoboom* involved a local rule that imposed fees for mediation services. That case was decided on two grounds: preemption and traditional statutory interpretation. In holding that the local fee rule was preempted by state law, the *Hogoboom* court noted a number of statutes and legislative history evincing legislative intent to occupy the field of court fees. Accordingly, the *Hogoboom* court invalidated the local rule because it imposed a requirement *in addition to* state statute, but the requirement was *additional fees* beyond those authorized by statute. (*Hogoboom*, *supra*, 51 Cal.App.4th at pp. 656-669.)

The *Hogoboom* court also noted that Government Code section 68070, subdivision (a)(1) expressly prohibits a court from enacting local rules which impose " 'any . . . charge . . . upon any legal proceeding.' " (*Hogooom*, *supra*, 51 Cal.App.4th at p. 669.) Employing traditional statutory interpretation rules, the *Hogoboom* court held that Government Code section 68070, subdivision (a)(1) prohibited the local fee. (*Hogoboom*, *supra*, 51 Cal.App.4th at pp. 669-671.)

*Hogoboom* does not support a blanket prohibition of local rules that impose requirements *in addition to* statute.

*Conae* did not involve a local rule. In *Conae*, a trial court issued an order to show cause and directed that the order and accompanying documents be personally served on

9

the opposing party, who was represented by counsel. (*Conae*, *supra*, 109 Cal.App.2d at p. 697.) On appeal, the court noted that the applicable method of notice and service was governed by Code of Civil Procedure section 1015, and that statute did not require personal service on a party. Accordingly, the appellate court held that that portion of the trial court's order was a nullity and properly disregarded at the time of the hearing. The appellate court, in arriving at this conclusion, stated the language cited by the majority here -- "A court may not by rule change or add to procedural requirements established by statutory provision. An order attempting to add requirements to those prescribed by a statute is to such an extent a nullity and void." (*Conae*, *supra*, 109 Cal.App.2d at p. 697.)

The addition made in *Conae* was not just *in addition to* statute, it was also *inconsistent with* statute. The trial court's requirement that the order to show cause be served on the opposing party conflicted with Code of Civil Procedure section 1015, which provided that when a party is represented, service must be "upon the attorney instead of the party." (*Conae*, *supra*, 109 Cal.App.2d at p. 697.) The *Conae* court's statement that "a court may not . . . add to procedural requirements established by statutory provision" is overbroad. No court has cited *Conae* in the 60 years since its publication for the proposition that a local rule is invalid if it goes beyond a statute by adding requirements, even if the rule is not inconsistent with statute.[10] Indeed, no case

---

[10] In fact, there is only one published case citing *Conae* in the context of conflicts with local rules of court. In *Albermont Petroleum*, *Ltd. v. Cunningham* (1960) 186 Cal.App.2d 84, on the day set for hearing on the plaintiff's summary judgment motion, the defendant sought to file affidavits and other documents in opposition to the motion. The trial court refused to allow them to be filed on the ground that they were untimely under an unpublished local rule of court. The court granted the plaintiff's motion and directed that judgment be entered for the plaintiff. (*Albermont*, *supra*, 186 Cal.App.2d at pp. 87-90.) Observing that Code of Civil Procedure section 473c, which governs summary judgment motion practice, imposed no time limit on the opposing party's right to file counteraffidavits (*Albermont*, *supra*, at pp. 90-91), the appellate court reversed, concluding that the unpublished rule was "irreconcilable" with the provisions of Code of

10

was cited by the *Conae* court as authority for the overbroad language relied upon by the majority here. As the majority notes (maj. opn., pp. 17-18), the *Conae* court merely cited *Butterfield* and *Henry v. Willett* (1922) 60 Cal.App. 244 (*Henry*) for comparison purposes. (*Conae*, *supra*, 109 Cal.App.2d at p. 697.)

In *Henry*, this court reversed a trial court order denying a change of venue motion. (*Henry*, *supra*, 60 Cal.App. at pp. 245, 252.) The opposing party objected in the trial court based on several grounds, one of which was that the motion had not been calendared on a regular law and motion day designated by a local rule of court. (*Id.* at p. 248.) This court wrote, "As to the objection to the hearing of the motion on the ground that it was not made on a regular law day, fixed by the rules of the superior court of Siskiyou County, the answer is that the rules of the courts cannot be invoked *to control or be substituted for* statutory provisions as to procedure." (*Henry*, *supra*, 60 Cal.App. at p. 252, italics added.) Clearly, rules that control or replace statutory provisions are inconsistent with statute. But that is not what we have here. In any event, *Henry* does not support a blanket prohibition against rules that go beyond statute by adding requirements that are not inconsistent with statute.

When possible, rules of court should be construed in a manner that maintains their consistency with statutory requirements. (*Trans-Action*, *supra*, 60 Cal.App.4th at p. 365.) I read the notary requirement as completely consistent with Family Code section 2550 and Code of Civil Procedure section 664.6.

---

Civil Procedure section 437c (*id.* at p. 91) and thus, "inconsistent and in conflict with the procedural requirements established by statutory provisions" (*id.* at p. 93). The court cited *Conae* as one authority for the quoted language. Thus, even in the one case where *Conae* has been cited concerning a conflict between a local rule and statute, *Conae* was cited for the proposition that a rule is invalid if it is *inconsistent and in conflict with* statute. The *Albermont* court did not repeat *Conae*'s implication that a rule is invalid merely because it contains requirements in *addition to* statute.

Our high court noted in *Elkins,* "[a] common theme in the appellate decisions invalidating local rules . . . is that a local court has advanced the goals of efficiency and conservation of judicial resources by adopting procedures that *deviated* from those established by statute, thereby impairing the countervailing interests of litigants as well as the interest of the public in being afforded access to justice, resolution of a controversy on the merits, and a fair proceeding." (*Elkins*, *supra*, 41 Cal.4th at p. 1353.)  Here, that common theme is not present.

As the Judicial Council's *Elkins* Family Law Task Force[11] noted in its final report, "Statewide family law rules do not address many areas of practice, and thus trial courts have developed rules and procedures to address the gaps."  (Judicial Council of Cal., Admin. Off. of Cts., Elkins Family Law Task Force:  Final Report and Recommendations (Apr. 2010) p. 30.)  Unless and until the Judicial Council adopts statewide rules to fill these gaps as recommended by the task force, trial courts should be allowed the flexibility afforded by the Legislature in Government Code section 68070, subdivision (a) to create local rules as long as such rules are not *inconsistent* with statute or Judicial Council rule.  I realize, as noted by the task force, that "local rules may serve as traps for the unwary." (Elkins Family Law Task Force: Final Report and Recommendations, *supra*, at p. 30.)  But no such *trap* is presented by a requirement that a self-represented party's signature on an MSA be notarized or that the party acknowledge the signature before a clerk, as a way to establish that the parties have, indeed, agreed to what is presented to the court.

---

[11]  The Supreme Court suggested establishment of the task force in *Elkins*.  (*Elkins*, *supra*, 41 Cal.4th at pp. 1346, 1369, fn. 20.)  The court noted, "Such a task force might wish to consider proposals for adoption of new rules of court establishing statewide rules of practice and procedure for fair and expeditious proceedings in family law, from the initiation of an action to postjudgment motions." (*Id*. at p. 1369, fn. 20.)

## B. Right to Counsel Admonition

I decline to comment on the validity of the right to counsel admonition component of local rule 30.7. As I have noted, Anna did not assert an alleged conflict involving this component of the rule in the trial court; therefore, the trial court was deprived of the opportunity to rule on this matter.[12] More importantly, Anna does not rely on this theory on appeal.[13] Therefore, I conclude any complaint that the right to counsel admonition requirement of local rule 30.7 conflicts with Family Code section 2550, Code of Civil Procedure section 664.6 or Evidence Code section 1123 is forfeited. (*Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 716 [points not raised on appeal are forfeited]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [party waives points not raised on appeal and points not supported with reasoned argument].)

Moreover, even if this theory is not forfeited because of Anna's failure to assert it both in the trial court and on appeal, I do not see how we can ground our opinion on the issue of a conflict between the right to counsel admonition component of the rule and the aforementioned statutes without affording the parties an opportunity to provide supplemental briefing. (See Gov. Code, § 68081 [before an appellate court renders a decision based upon an issue that was not proposed or briefed by any party to the

---

[12] This is no small matter. On one hand, the trial court may have agreed that the right to counsel admonition is inconsistent with statute, in which case the expenditure of considerable judicial resources by this court on the matter would have been avoided. On the other hand, a trial court's ruling finding no conflict between the rule and statute would have provided this court with the trial court's insight and a better record upon which to rule on the matter. (See *Elkins*, *supra*, 41 Cal.4th at pp. 1365-1369 [respondent court's arguments in favor of the court's local rule and the Supreme Court's response to those arguments].) In any event, the trial court should not be bypassed. It should be given the first opportunity to weigh in on issues related to its own local rules.

[13] Also, as I have noted, Anna has never invoked Family Code section 2550 or Evidence Code section 1123 as statutes with which the local rule conflicts.

13

proceeding, "the court *shall* afford the parties an opportunity to present their views on the matter through supplemental briefing"] (italics added).)

### III.  Conclusion

I agree that the trial court appropriately approved the MSA on the ground that it had the authority to do so in the interest of justice, notwithstanding that the MSA did not strictly comply with local rule 30.7.  I disagree with the majority's invalidation of local rule 30.7 and concur in all other respects.


                                                     MURRAY_____, J.