[No. B145321. Second Dist., Div. Six. Aug. 15, 2001.]

In re the Marriage of MICHAEL A. and LAUREL C. BRYANT.
MICHAEL A. BRYANT, Appellant, v.
LAUREL C. BRYANT, Respondent.

*Deleted on direction of Supreme Court by order dated December 12, 2001.

## COUNSEL

Vanessa Kirker and C. Richard Whiston for Appellant.

Herb Fox; Fell, Marking, Abkin, Montgomery, Granet & Raney, Jamie F. Raney and Barry Pinnolis for Respondent.

## OPINION

**GILBERT, P. J.**—In an initial custody determination the trial court awarded primary physical custody to the mother, who intends to move with the children to New Mexico. Because the trial court found the move was not motivated by bad faith, it did not abuse its discretion. We affirm.

### FACTS

Michael A. and Laurel C. Bryant[1] were married in 1985. They have two children of their marriage, ages six and nine. Before the parties had their first child they decided that Laurel would stay at home and be the primary caregiver to the children, while Michael would work to provide for the family. The parties continued this arrangement even after Michael moved from the family home in September of 1998.

After Michael moved out, the parties attempted reconciliation. From the time he moved until April of 1999, the family continued to have meals together and Michael stayed in the family home with the children two nights a week. Laurel refused to allow overnight visitation outside the family home because the children had not been told about the separation.

The children were informed of the separation in April of 1999. At that time, Michael was living with his father. Laurel refused to allow overnight visitation in Michael's father's home. She said she was concerned about the presence of dogs, firearms and a large swimming pool. Laurel allowed overnight visits after Michael moved into his own apartment.

The parties stopped seeking reconciliation in February of 2000. Michael filed for dissolution of marriage in July. Laurel requested custody of the children and stated her intention to move to New Mexico with them. The question of custody was tried separately.

Laurel testified she wanted to move to New Mexico to be with her family. She said she grew up there. Her parents, brother and sister-in-law and their three children live there. She said that she and her children need the emotional support that her family can provide. Laurel admitted she was not moving for financial reasons. She has a trust that can provide adequate financial support.

---

[1]Hereafter we refer to the parties by their first names, not from disrespect, but for clarity.

Laurel testified that she is the children's primary parent. Although Michael is a good parent, she has an emotional relationship with the children that Michael does not have.

Pursuant to a stipulation of the parties, Kathleen Duval, M.F.C.C., performed a custody evaluation. Duval's reports were admitted into evidence. Duval recognized Laurel as the primary parent. Duval said that Laurel had a greater level of involvement in the children's lives than Michael. In Duval's opinion, it would be detrimental to the children to make a "radical shift" to Michael as the primary parent. Duval said she has no reason to believe that Michael would abandon his children if Laurel moves to New Mexico.

Gayle Clay, a therapist for one of the children, testified that the relationship between mother and child was "easy-flowing" and "connected." She said the relationship between father and child "does not flow as easily."

Clay said the need for a person who has been rejected in a marriage to be around supportive family and friends is "extremely high." This is relevant to the children because the children need to see that their primary caregiver is strong and healthy.

Michael testified that Laurel was moving in order to punish him. He believes the best interest of the children would be for Laurel to remain in Santa Barbara and continue to be their primary parent. If Laurel moves to New Mexico, however, he believes it would be in the best interest of the children to award him primary custody.

Michael said he sees the children three or four times a week and talks to them on the telephone daily. If the children moved to New Mexico, he would not be able to be involved in their daily activities. He expressed doubts about Laurel's family's willingness to accommodate visitation in New Mexico. He said Laurel's father threatened that if Michael broke up the family he would make it rough on him.

Gordon Hess, Ph.D., was the parties' marriage counselor. He said the best situation for the children would be for both parents to live in Santa Barbara. But if Laurel moves to New Mexico, it would be in the best interest of the children for Michael to be awarded primary custody and for the children to remain in Santa Barbara.

The trial court found that Laurel was not motivated to move by bad faith. Nor had Laurel unreasonably interfered with Michael's visitation with the children. The court awarded joint legal custody with primary physical

custody to Laurel. The court awarded visitation to Michael. He has a total of 10 weeks per year in Santa Barbara. He may also visit the children for as many weekends as he desires, in addition to visiting them for each of their birthdays. The court retained jurisdiction.

DISCUSSION

I

■ In *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473], our Supreme Court discussed the so-called "move-away" orders. As in all cases where an initial custody determination is at issue, the trial court has " 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*Id.* at p. 31.) This requires the court to consider all the circumstances. (*Id.* at pp. 31-32.) Among the circumstances the trial court must consider are the presumptive right of a custodial parent to change the residence of the minor children and the effect of such relocation on the children's rights and welfare. (*Id.* at p. 32.) Neither party has the burden of persuasion to justify a choice of residence as a condition of custody. (*Id.* at p. 34.)

■ We review a custody and visitation order for abuse of discretion. (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32.) We must uphold the ruling if the trial court could have reasonably concluded that the order in question advanced the best interest of the child. (*Ibid.*)

II

■ Michael contends the trial court failed to evaluate all the circumstances of the case. Specifically, he claims the trial court failed to evaluate the reasons for the move.

But a custodial parent has a statutory right to change the residence of the child, subject to the power of the court to restrain a move that would prejudice the rights or welfare of the child. (Fam. Code, § 7501.)[2] The parent proposing to move away is not required to establish a need or even a justification for relocating to another geographic area. (See *In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 543 [73 Cal.Rptr.2d 33].) The only exception is where the reason for the move is to frustrate the noncustodial parent's relationship with the child. (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1206, fn. 6 [62 Cal.Rptr.2d 766].)

Michael cites *Cassady v. Signorelli* (1996) 49 Cal.App.4th 55 [56 Cal.Rptr.2d 545] for the proposition that the court will not sanction a move

---

[2]All statutory references are to the Family Code.

away where the reason is whimsical. But the ruling in *Cassady* was based on a finding that the mother intended to frustrate the father's relationship with the child. (*Id.* at p. 59.) In any event, Laurel's desire to have the comfort and support of her parents and other family members in the aftermath of the dissolution of her marriage cannot be fairly described as whimsical.

Here the trial court found that Laurel was not acting in bad faith. No further inquiry was necessary or appropriate. The trial court did not err in failing to evaluate the reasons for the move.

## III

Michael contends the trial court failed to consider established relationships in making its custody determination. Michael cites section 3020 for the proposition that it is the policy of the law to "encourage parents to share the rights and responsibilities of child rearing" and to "assure that children have frequent and continuing contact with both parents . . . ."

Michael points out that it was the parties' arrangement for him to support the family and for Laurel to be the children's primary caregiver. He argues it is against public policy to use this arrangement against him to restrict the frequency and continuity of contact with his children.

But the policy of assuring frequent and continuing contact must be viewed in light of other policies. It is also the policy to allow the custodial parent the freedom to move. (§ 7501.) That the move of a custodial parent may have an adverse effect on the frequency of contact by the noncustodial parent is not by itself determinative. What is determinative is the best interest of the children, given that one parent is moving and the other is not. (See *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.)

From Michael's point of view, it may be unfair that because he provided primary financial support for his family he had less contact with his children. But the question presented to the trial court is the best interest of the children, not fairness to Michael. Unfortunately where, as here, both parents are competent and loving, there is frequently no solution that is fair to everyone involved.

Here the trial court satisfied the policy under section 3020 of assuring frequent and continuing contact by awarding liberal visitation to Michael. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 36.)

## IV

Michael contends the trial court must consider the reason for the move in light of the circumstances of the case.

But as we have already stated, except to show that the move is not in bad faith, the reason is irrelevant. It may well be that the children are established and thriving in Santa Barbara. Nevertheless, Duval, the parties' custody evaluator, testified it would be best for the children to award primary custody to Laurel notwithstanding the move. Duval also testified that a radical shift to Michael as the primary parent would be detrimental to the children.

## V

Michael contends the trial court must consider the soundness of the reasons for the move.

In support of his contention Michael cites the concurring and dissenting opinion of Justice Baxter in *In re Marriage of Burgess, supra,* 13 Cal.4th at page 44. ■ But a principle stated in a California Supreme Court opinion is not the opinion of the court unless it is agreed to by at least four of the justices. (*Del Mar Water, etc., Co. v. Eshleman* (1914) 167 Cal. 666, 682 [140 P. 591].) A dissenting and concurring opinion is not controlling.

Michael cites *In re Marriage of Burgess, supra,* 13 Cal.4th at page 36, footnote 7, for the proposition that "[n]either parent should be confronted with 'Solomonic choices' over custody of minor children." He claims that the court's decision confronts him with such choices. Michael states that if he wants to maintain his relationship with his children he must quit his job, leave his family, friends and community and move to new, somewhat hostile, environment.

Our Supreme Court did not state precisely what it meant by "Solomonic choices." Obviously, anytime a custodial parent moves a substantial distance with the parties' children, the noncustodial parent will face choices similar to those Michael now faces.

But Michael is not faced with the choice between staying in Santa Barbara and losing all substantial contact with his children. The trial court has ordered liberal visitation rights. Michael concedes he has the financial ability to take advantage of those rights. Although the situation is hardly ideal, the choices Michael faces cannot be described as "Solomonic."

The dissent acknowledges that we are "apparently obedient" to *In re Marriage of Burgess* but because the facts here are distinguishable we are not bound by *Burgess.*

It is true the trial court mused that the best interests of the children would be to remain in Santa Barbara with the mother. The court reasoned that it

could accomplish this arrangement through coercion if it conditionally granted physical custody of the children to the father if the mother moves away. But as the trial court recognized, such a ruling would be contrary to *Burgess.* The trial court was merely reflecting on thoughts similar to those expressed by Duval, the court-appointed custody evaluator, on cross-examination. As a general proposition, "in a perfect world," it would be best if the children and their mother stayed in Santa Barbara. As Michael's counsel suggested at oral argument, it would probably be in the best interests of the children if the parties stayed married. But such reflections do not alter the outcome here.

 Having found that Laurel was not acting in bad faith and that it is in the best interests of the children for custody to be with Laurel, the trial court was bound to rule as it did. We agree with the dissent that *Burgess* is disquieting because in cases such as this one it leaves the children with the second-best solution. But under *Burgess* there was no abuse of discretion.

The trial court's order is affirmed. Costs on appeal are awarded to Laurel.

Coffee, J., concurred.

**YEGAN, J.**—I respectfully dissent. This is the second time this court has considered the best interests of the Bryant children. Michael A. Bryant (Father) previously and unsuccessfully petitioned for a writ of supersedeas. He asked that we stop the children from relocating to Albuquerque, New Mexico pending resolution of the appeal. I dissented then to the summary denial of the petition.

The majority opinion is apparently obedient to the text of *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*). I say "apparently" because it is unclear whether a custodial parent who moves without bad faith may automatically take the children even if the trial court believes that such a relocation is detrimental to the children. In any event, the facts of the presenting case are more than "fairly distinguishable" from those in *Burgess.* Consequently we should not be bound thereby and a departure is warranted. (*People v. Triggs* (1973) 8 Cal.3d 884, 890-891 [106 Cal.Rptr. 408, 506 P.2d 232].)

I recognize that appellant must demonstrate, as a matter of law, that the trial court abused its discretion in order to obtain reversal. (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 812 [105 Cal.Rptr.2d 923].) In my view, the uncontested facts and the trial court's statement of decision show an abuse of discretion.

In pertinent part, the trial court explained: "There are two realistically possible scenarios in this case. The court could conditionally grant physical custody of the children to the father (with liberal visitation to the mother) if the mother moves away, with joint physical custody if the mother remains in Santa Barbara. In all likelihood, the court could force the joint-physical-custody scenario, since it is unlikely that mother will move away if it means she thereby becomes the non-custodial parent. This would be the optimum scenario for the best interests of the children, since it would preserve their lifelong social structure in the Santa Barbara area with very successful schooling, church, sports, paternal extended family and maternal aunt and would maximize the children's frequent and continuing contact with both parents."

Nevertheless, the trial court opted for what can be and must be characterized as a custody arrangement that was not the optimum scenario for the children. It expressly said that it was "compelled to select what is <u>next best</u> in the children's interest." Having sat as a trial court judge in a family law department and having similarly agonized over rulings in contested move-away cases, I "appreciate the family law court's dilemma. A custody decision is one of the most serious decisions a family court judge is required to make. Move-away cases are particularly troublesome because, in most situations, they start with a parent's election to move." (*In re Marriage of Williams, supra*, 88 Cal.App.4th at p. 813.) That is what happened here.

Laurel C. Bryant (Mother) has elected to move for but one reason, the emotional support of her parents and family in New Mexico. To be sure, and as the majority point out, this is not a bad faith reason. From mother's standpoint, the move is in her best interests. That does not necessarily translate to the move being in the best interests of the children. They are now nine and seven years old and have had a nurturing and successful childhood in Santa Barbara. To uproot them for selfish reasons is not in their best interests.[3] Judicial sanction of the move has adverse consequences which, as a matter of law, outweigh the single consideration for the move. Phrased otherwise, the relocation is to the detriment of the children.

Both the trial court and the majority read *Burgess* as a "bright-line" rule. The trial court said: "[U]nder *Burgess* precedent, the trial court's inquiry begins and ends with whether the relocation is for a bad faith purpose such as frustrating the non-custodial parent's frequent and continuing contact with his children. Where the relocation is not in bad faith, the court may not

---

[3]The trial court, the court's appointed expert, and the parties' therapist all agreed that the move to Albuquerque was not a good parenting decision. The court's appointed expert opined that mother wanted to move to "escape a failed marriage."

require the relocating parent to show necessity or justification for the move." The majority opinion expressly agrees. (Maj. opn., *ante*, at p. 794.) I am hopeful that the California Supreme Court did not intend that *Burgess* be interpreted in a "straightjacket" fashion. A family law court is a court of equity (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1044 [31 Cal.Rptr.2d 749] and it is required to weigh all relevant considerations in determining what is in the best interests of the children.

*Burgess* speaks to the "widest discretion" enjoyed by the trial court in determining what is in the best interests of the children in a custody dispute. (*Burgess, supra,* 13 Cal.4th at pp. 31, 34.) It also requires the trial court to consider the prejudice to the children from a relocation. (*Id.,* at pp. 32, 34.) A move should not be allowed where such would be " 'detrimental to the child.' " (*Id.,* at p. 35, quoting *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 749].) *Burgess* expressly states that "bright line rules in this area are inappropriate: each case must be evaluated on its own unique facts." (*Burgess, supra,* 13 Cal.4th at p. 39.) In my view the trial court did not want to make the order that it did.[4] Even from the cold record, it appears that the relocation of these children is to their detriment. (*Id.,* at p. 35.)

When the trial court expressly indicated what the optimum scenario would be, it should have stopped and entered that order. By definition, and in the words of the trial court, it selected what was "next best."

---

[4] In its seven-page statement of decision, the trial court says: "Father urges the court to challenge the *Burgess* decision by finding that the best interests of the children so outweigh the mother's reasons for the move-away that the court should pressure the mother to remain in Santa Barbara. If there were a case in which to do exactly that, this is the case."