Filed 6/23/22  Marriage of Haney CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of AMY LAURA HANEY and DAVID CHARLES HANEY. | B314161 |
| | (Los Angeles County Super. Ct. No. 18AVFL00813) |
| DAVID CHARLES HANEY, | |
| Appellant, | |
| v. | |
| AMY LAURA HANEY, | |
| Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robert J. Palazzolo, Commissioner.  Affirmed.

David C. Haney, in pro. per., for Appellant.

No appearance for Respondent.

David and Amy Haney's[1] marriage was dissolved, and Amy was awarded primary physical custody of their child. David now appeals orders requiring him to pay child and temporary spousal support and attorney fees and allowing Amy to relocate to Georgia with their child.[2] We affirm.

## BACKGROUND

David and Amy married in 2014. They had one daughter, Charly, who was born in 2017. In 2018, David petitioned for dissolution of the marriage. The family court granted the dissolution. On August 8, 2019, the family court awarded parents joint legal custody but gave Amy primary physical custody and David visitation weekdays for three hours each day and weekends twice a month.

In December 2020, Amy requested spousal support and to be allowed to relocate with Charly to Georgia. She also requested attorney fees in the amount of $18,000. In her brief, Amy represented that she had job offers for full-time work in Georgia and that Georgia's educational system would be better for Charly.

David opposed the requests and asked that Charly remain with him if Amy relocated. In his various written opposing papers, David argued that if Charly moved away, it would detrimentally impact his relationship with her and her relationship with her half-sibling (David's older daughter from another relationship). It would also be detrimental because both parents had cared for Charly, and Charly would not be able to attend family gatherings with David's extended family. As to the

---

[1] We refer to the parties by their first names to avoid confusion.

[2] Amy has not filed a responsive brief on appeal.

request for spousal support, David argued that the marriage was of short duration and Amy, who was only working part-time, had the means to provide for herself.

On April 2, 2021, after an evidentiary hearing, the family court issued a statement of decision regarding attorney fees. After reciting the parties' respective incomes and cash, the family court found that Amy had incurred $16,000 in reasonable attorney fees and costs and that under the appropriate Family Code provisions, she was entitled to $2,500 in attorney fees.

Thereafter, on May 5, 2021, after a short-cause trial at which the parties testified, the family court ordered David to pay child support in the amount of $520 per month from February 2019 to January 2020, increased to $677 per month in February to April 2020, decreased thereafter to $619 per month until Charly came of age. The family court further ordered David to pay $140 per month in temporary spousal support from February 2019 to April 15, 2020.[3] Finally, the family court made its prior August 8, 2019 child custody and visitation orders final.

It appears that a further evidentiary hearing occurred on May 18, 2021 regarding Amy's request for a move-away order, after which the family court took the matter under submission. The family court then issued another statement of decision on June 7, 2021 granting Amy's relocation request. The family court summarized that Amy wanted to move with four-year-old Charly to Georgia to live with Amy's fiancé and to seek better employment opportunities for herself and educational opportunities for Charly. After finding no evidence of domestic violence, child abuse, or drug abuse, the family court found that

---

[3] David moved for reconsideration and that motion was denied.

3

although David had a "close bond" with Charly and was an attentive parent, Amy had been Charly's primary caretaker for most of Charly's life and had a "stronger" bond with Charly. Charly loved each parent very much, and they loved her. Due to Charly's young age, the family court did not consider any preference she might have. The family court found that David and Amy were able to communicate and cooperate in Charly's best interests. Further, the family court considered that David had full-time employment as a civil technician, while Amy was seasonally employed part-time with a school district. Due to the distance of the proposed move and the parties' limited resources, the family court also considered that any visits would have to be fewer in number and longer. Amy was therefore given sole physical custody of Charly, and David was given visitation in Georgia at his expense. The court also established a holiday schedule.

On July 21, 2021, the family court issued its order on the statement of decision, stating it was granting parents joint legal custody and allowing Amy to relocate with Charly, over whom Amy would have sole physical custody while in Georgia.

David appeals the order allowing Amy to relocate to Georgia with Charly, the May 5, 2021 orders, and the April 2, 2021 attorney fees order.

## DISCUSSION

I.      Move-away order

The applicable legal standard to address a move-away request depends on whether the relocating parent has sole or joint physical custody of the child.  A parent having sole physical custody of a child has a presumptive right to move away.  (Fam. Code,[4] § 7501, subd. (a); *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1078.)  The noncustodial parent bears the initial burden of showing that relocating the child's residence would be detrimental to the child, requiring a reevaluation of custody. (*LaMusga*, at p. 1078.)  If the noncustodial parent makes that showing of detriment, then the trial court must determine whether a change in custody would be in the child's best interests.  (*Ibid.*)  In assessing detriment and prejudice to the child's welfare as a result of relocating and whether to modify a custody order, the family court may consider the child's interest in stability and continuity in the custodial arrangement; the distance of the move; the child's age; the child's relationship with the parents; the parents' relationship, including their ability to communicate and cooperate effectively and their willingness to put the child's interests above their own; the child's wishes, if appropriate; the reasons for the move; and the extent to which the parents currently share custody.  (*Id.* at p. 1101.)

---

[4]      All further undesignated statutory references are to the Family Code.

5

Where parents have joint custody, custody may be modified if in the child's best interests.  (§ 3087; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 40, fn. 12 (*Burgess*).)  The relocating parent does not have a presumptive right to change the child's residence, and the other parent does not have to show detriment.  (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 362.)  Rather, the trial court determines de novo what physical custody arrangement is in the child's best interests.  (*Id.* at p. 364.)

Determining whether a parent has sole or joint physical custody can depend on the parties' actual practice.  In one case, for example, where the father saw his son as frequently as four or five days a week (notwithstanding the formal arrangement), the court said that the parties had joint physical custody.  (*Brody v. Kroll* (1996) 45 Cal.App.4th 1732, 1735–1736.)  In *In re Marriage of LaMusga*, *supra*, 32 Cal.4th at pages 1081 to 1082, the mother had primary physical custody and the father had visitation for a few hours two nights per week and overnight visits every other weekend.  The court treated this arrangement as mother having sole physical custody.

We review custody and visitation orders for an abuse of discretion.  (*Burgess*, *supra*, 13 Cal.4th at p. 32.)  A trial court abuses its discretion if there is no reasonable basis on which it could conclude its decision advanced the child's best interests or if the court applied improper criteria or made incorrect legal assumptions.  (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.)  We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo, reversing only if its application of law to facts is arbitrary and capricious.  (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

Moreover, on appeal, we presume that a lower court's judgment or order is correct, and we indulge all intendments and presumptions in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellant, here David, had the burden to affirmatively show error. David, however, did not submit a reporter's transcript of the evidentiary hearings relating to the move-away request. Although we appreciate the expense and difficulties in navigating the appellate process, especially for an unrepresented parent, we nonetheless cannot properly evaluate certain rulings in the absence of all relevant matters, such as all evidence and testimony before the trial court. Thus, where "no reporter's transcript [or settled statement] has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992; see Cal. Rules of Court, rules 8.130, 8.134, 8.137.)

Here, there is no clear or apparent error on the face of the move-away order. The family court appears to have evaluated various factors, considering, for example, that even though parents shared custody and David had a close bond with Charly, Amy was her primary caretaker and, as such, had a stronger bond with her. (See, e.g., *In re Marriage of Bryant* (2001) 91 Cal.App.4th 789 [where mother had primary physical custody of children, trial court did not abuse discretion in finding detriment to children if custody were shifted to father].) By this, the court was implicitly finding that remaining in Amy's primary care furthered Charly's interest in stability and continuity and to

7

upset that would be detrimental to Charly. Also, David and Amy were able to communicate and to cooperate to further Charly's interests, suggesting that Amy could put Charly's welfare first, which would include maintaining a relationship with David. Also, Amy stated reasons for the move that the court must have found were legitimate: to be with her fiancé, to take advantage of employment opportunities, and to give Charly educational opportunities.

Thus, even if we would have ruled differently, we cannot find that the family court abused its discretion on this record. Rather, as a court has observed, "Unfortunately where, as here, both parents are competent and loving, there is frequently no solution that is fair to everyone involved." (*In re Marriage of Bryant*, *supra*, 91 Cal.App.4th at p. 794.)

II.     The May 5, 2021 orders

David appears to appeal the May 5, 2021 child support and temporary spousal support orders, which were also issued after a short-cause trial or evidentiary hearing at which the parties testified. We review such orders for abuse of discretion. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529 [child support]; *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 104 [temporary spousal support].) Given the standard of review, David's failure to provide the reporter's transcript from the hearing again prevents us from performing an adequate review.

In any event, David's contention regarding the May 5, 2021 orders appears to be that the family court made its prior August 18, 2019 order regarding child custody final. It is unclear what is the nature of David's specific argument, and therefore the basis for reversal is not apparent.

8

III.    Attorney fees order

David states in his opening brief that he is appealing from the attorney fees order issued on April 2, 2021.  Although such an order is appealable (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1311), David did not identify the order in his notice of appeal.  Where several judgments or orders are separately appealable, each appealable judgment or order must be expressly specified, in a single notice of appeal or multiple notices of appeal, to be reviewable on appeal.  (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.)

In any event, in a family law matter, a court may order payment of attorney fees and costs based on "disparity in access to funds to retain counsel" and "ability to pay."  (§ 2030, subd. (a)(2).)  Ordering payment of attorney fees and costs helps ensure each party has access to legal representation to preserve each party's rights.  (§ 2030, subd. (a)(1).)  A trial court has discretion in fashioning an attorney fees award (*In re Marriage of Tharp, supra*, 188 Cal.App.4th at p. 1313), and, on appeal, we review an attorney fees award for an abuse of discretion.  (*In re Marriage of Ciprari, supra*, 32 Cal.App.5th at pp. 111–112).  Given the absence of the record of the evidentiary hearing, David has not sustained his burden of showing such an abuse of discretion.

## DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL
REPORTS**


EDMON, P. J.


We concur:



EGERTON, J.



KIM, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.