Filed 7/25/23  Marriage of Miller CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re the Marriage of RANDALL AND ADRIANA MILLER. | |
| RANDALL S. MILLER, | E078100 |
| Respondent, | (Super.Ct.No. FAMSS1710551) |
| v. | OPINION |
| ADRIANA N. MILLER, | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Aruna P. Rodrigo, Judge.  Affirmed.

Adriana N. Miller, in pro. per., for Appellant.

Law Office of Torrence L. Howell and Torrence L. Howell for Respondent.

1

Adriana[1] Miller appeals from an order respecting child custody and visitation respecting her child, K. She argues the court erred in declaring the residence of Randall Miller, the father of the child and respondent in this appeal as the primary residence of the child. Based on the limited record before us, we affirm.

## BACKGROUND[2]

Adriana and Randall were previously married and have one child between them, K., who was 10 years old at the time of the hearing giving rise to this appeal. The parties separated in November 2017. Until June 2018, Adriana had physical custody of K., at which point the parties entered into an agreement for the sharing of custody and timesharing of K.

Certain orders for custody and visitation respecting K. were made as part of the judgment of dissolution, and they remained in effect until December 2020. Among the orders were visitation orders providing "father shall have the child as follows: On alternate weeks from Thursday after school or in the morning until Monday drop off at school or in the afternoon commencing June 22nd, 2018."

It further provided he would have visits, "on alternate weeks from Wednesday after school or in the morning until Friday drop off at school or in the afternoon

---

[1] We refer to the parties by their first names to avoid confusion, and not out of disrespect.

[2] We refer to the testimonial references to certain historical facts because the record on appeal lacks pertinent documents or information respecting the original orders for child custody and visitation, the "family care plan" apparently executed in November 2020, the request for order filed by Adriana, any response filed by Randall, or the recommendation by the child custody recommendation counselor.

commencing June 27, 2018."  The parties thus had agreed upon a shared custody

arrangement between June 2018 and December 2020.  The time frames are uncertain as

to other key events, but it appears Adriana applied for enlistment in the Air Force in

December of 2020, and informed Randall when she went in, in January 2020.[3]  At some

point, probably in November 2020[4], the parties signed a family care plan, the terms of

which are not in the record, but under which K. was placed with Randall on a full time

basis between December 2020 and June 2021, while Adriana was in basic training.  In

March 2021, Adriana learned she was being assigned to South Carolina and, because the

current custody orders would sunset soon, she asked Randall to participate in a

formalized plan because the current orders did not take this situation into account, but

Randall refused.

　　　During the time that K. has lived in Randall's home, there were some attempts to

undermine Adriana's ability to spend quality time with K. when she came to California.

In December 2020, Adriana was able to come for a two-day visit, but Randall's family

had a boat outing scheduled at a lake, so Randall told her that K. was unavailable for one

---

[3]  There is inconsistency in the testimony about the operative dates.  On the one hand, Adriana testified she applied to join the Air Force in December 2019 and "went in" in January 2020, while, on the other hand, her counsel referred to her entering the military in December 2020.  Adriana's brief refers to her enlistment as occurring in December 2020.

[4]  Randall testified the family care plan was signed in November of that same year, but the hearing occurred in August 2021.  By the process of extrapolation, we determine that the family care plan must have been prepared and adopted in November 2020.

of the days. Randall did not dispute this incident but explained Adriana gave him only a few days' notice and the boat had already been packed and prepped for a one day outing.

That same weekend, Adriana contacted Randall and his mother (paternal grandmother) separately to let them know she was coming out and wanted to surprise K. at his baseball game. She asked the paternal grandmother to record it, but the paternal grandmother did not think it was a good idea because it would throw K. off his game. The paternal grandmother denied the incident, but Randall acknowledged that it had occurred, referring to Adriana's plan as "a performance." Randall conceded K. would have loved the surprise, but that it would interfere with his baseball playing. Randall also agreed that while Adriana was in basic training, the maternal grandmother requested a two week visit with K. but that he refused to permit the visit because of school.

Randall also proposed that K. visit Adriana the weekend before Thanksgiving because his family had a longstanding tradition of driving out to the desert to ride dirt bikes, beginning the Friday after Thanksgiving Day. He explained his extended family had made this trek for 50 years, but then conceded that K. was six years old the first time he went, and the family did not make the trek during the pandemic.

Adriana's current assignment is at Shaw Air Force Base in South Carolina. Between June and July 2021, K. spent a month with her in South Carolina during the summer preceding the hearing and participated in many activities. After that visit, K. was returned to his father's home, where he has remained until the date of the hearing.

Adriana had researched educational and extracurricular programs for K., and Adriana's mother intended to move to South Carolina to assist with childcare while

Adriana was at work. Adriana had no intention of removing Randall from the picture and had discussed the possibility of a 50/50 shared custody arrangement with him, which would ensure K. was able to play baseball (Randall is one of the team's coaches), but Randall was not interested.

Adriana also asked Randall if K. could stay in virtual learning (available through his current school) so that he could stay five months with each parent while staying in the same school. Although K. did well with virtual learning during the pandemic, Randall did not want K. to do another year of virtual education.

At some point, possibly in June 2021 (according to the register of actions), Adriana filed a request for order. This request, which, like other important documents that are not to be found in the record on appeal, was summarized by the court as a request for an order allowing Adriana to move with the child to South Carolina, according to the trial court's description.

At the evidentiary hearing, the court's child custody recommending counselor, testified that K. should remain with father for the school year, although her report is not a part of the record. Thereafter, the two grandmothers described their respective significant relationships with K. Adriana described Randall's temper and anger issues, which had been displayed in front of K., including an incident in which she overheard Randall angrily speak in derogatory language to K. while Randall was on the phone with her. After this incident, K. went to his paternal grandmother's house and told his paternal step-grandfather he was afraid of Randall. Adriana also recalled Randall yelling at K.

5

during baseball games if K. did not perform "amazing[ly]" in the presence of others. The maternal grandmother also observed Randall's temper and inappropriate discipline of K.

After hearing the testimony of the parties and arguments of counsel, the court found the parties had a shared custody arrangement, involving significant time spent by the child with both parents. The court also concluded that Family Code section 3047 applied to the period of time covered by the family care plan (during Adriana's basic training), but that Adriana was currently assigned to the post in South Carolina and was not on a deployment. This finding gave rise to the court's determination of the parties' burdens and the standard of proof to be applied to the move away request, which the court deemed a *de novo* standard.

After hearing the testimony of the parties and the grandmothers, the court made the following orders: the parents would share joint legal custody, and K. would attend school in father's school district, although the court did not find it appropriate to order sole physical custody.[5] At Adriana's election, she would have all three-day weekends with K., and will have every summer beginning the week after the close of school and three weeks prior to the start of the fall semester, along with winter breaks every odd year and Thanksgiving holiday every even year, and every spring break. All other times would be spent with father. The formal written orders were filed on October 4, 2021.

On November 22, 2021, Adriana appealed.

---

[5] The written order indicates the court ordered joint legal and physical custody.

DISCUSSION

Neither party's brief has been particularly helpful, partly because the record is inadequate and partly because neither party has fully followed the Rules of Court governing citations to the record. (Cal. Rules of Ct., rule 8.204(a)(1)(C).) Adriana argues the trial court erred in allowing K. to be "ripped away from the mother-son bond they cherished since being in the womb." We appreciate the pain a parent may feel, but disappointment is not a legal issue we can resolve. Our limited function is to review the record and identify any legal error committed by the trial court that prejudiced the appellant.

A. *Standard of Review and General Principles Governing Appellate Review*

"'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.'" (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255, quoting *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).) Under this test, we must uphold the trial court ruling if it is correct on any basis, regardless of whether such basis was actually invoked. (*Burgess, supra,* at p. 32.) To warrant reversal, therefore, the burden is on the appellant to show error and resulting prejudice. (*People v. Coley* (1997) 52 Cal.App.4th 964, 972.)

California Constitution, article VI, section 13, provides, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error

complained of has resulted in a miscarriage of justice." Thus, "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) It is an appellant's burden to persuade us that the court erred in ways that result in a miscarriage of justice. (Cal. Const., art. VI, § 13; *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 204-205.)

B. *Principles Governing Child Custody and Move-Away Orders*

Adriana sought a move-away order, permitting her to remove K. to South Carolina, where she was currently stationed. In connection with this request, an evaluation was conducted by the child custody recommending counselor who made a recommendation to the court and testified at the hearing. However, her report was not included in the record on appeal. She argues that the court's custody orders were wrong because they "ripped" K. from her custody. We disagree. Adriana had not previously been awarded sole physical custody so there was no custody to "rip away." Further, the court's final judgment of custody awarded joint legal and physical custody, so she was not deprived of custody.

First, we recognize the policy of assuring frequent and continuing contact must be viewed in light of other policies, such as the policy to allow the custodial parent the freedom to move. (*In re Marriage of Bryant* (2001) 91 Cal.App.4th 789, 794[6]; Fam.

---

[6] See *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1099, where the Supreme Court discussed how the appellate court overstated the importance of the

*[footnote continued on next page]*

Code, § 7501.)  That the move of a custodial parent may have an adverse effect on the frequency of contact by the noncustodial parent is not by itself determinative.  What is determinative is the best interest of the children, given that one parent is moving and the other is not.  (See *Burgess, supra,* 13 Cal.4th at p. 32.)

However, in this case, as we have explained, Adriana was not the custodial parent because (a) there was no final judgment awarding her sole physical custody in operation at the time Adriana made her request for an order, and (b) the prior stipulated orders awarded joint legal and physical custody to both parents.  As such, Family Code section 7501 did not come into play, and the court was tasked with making a final custody judgment that would determine the custodial rights of the parties.

### 1.  *The Report of the Child Custody Recommending Counselor*

The court found that maintaining K. in his current school and extracurricular activities was in his best interests.  In reaching its conclusion, the court considered all the evidence presented in making the determination, including the report of the child custody recommending counselor, which Adriana challenges on appeal.  Unfortunately, Adriana's challenges to the recommendations made by the child custody recommending counselor are not properly before us because the parties—Adriana included—stipulated the report

---

superior court's finding that the mother was not acting in bad faith, although it agreed it may be relevant that a parent seeks permission to move away with a child in bad faith.

could be admitted into evidence and that it could be considered by the court, forfeiting any challenge to the report and its recommendations.[7]

"'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]'" (*In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) Adriana has forfeited any claim of error by the trial court in considering the recommendation of the child custody recommending counselor.

### 2. *Orders for Custody and Visitation*

As for any error in the orders respecting parenting and visitation, again Adriana has not shown error or prejudice. When making an initial custody determination, including one that involves a move-away request, the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (b).) "It must look to *all the circumstances* bearing on the best interest of the minor child." (*Burgess, supra*, 13 Cal.4th at pp. 31-32.) It must consider the health, safety, and welfare of the child; any history of abuse by one parent against the child or the other parent; and the nature and amount of the child's contact with the parents. (*Id.* at

---

[7] We point out that Adriana could not establish prejudice from the court's consideration of the report anyway, where the court did not follow the recommendations of the counselor. Indeed, the counselor recommended sole physical custody be awarded to father, whereas the court awarded joint legal and physical custody.

p. 32.)  These factors are not exclusive, and the court may consider any other factors it finds relevant.  (Fam. Code, § 3011, subd. (a).)

The rule giving a custodial parent the right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child (Fam. Code, § 7501, subd. (a)), is a codification of the holding of the California Supreme Court in *Burgess, supra,* 13 Cal.4th 25.  (Fam. Code, § 7501, subd. (b).)  But this presumptive right only applies to final custody judgments, that is, "whenever [final] custody has been established by judicial decree."  (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535; *Montenegro v. Diaz, supra*, 26 Cal.4th at p. 256.)

Here, the operative custody and visitation orders existing at the time of the hearing were stipulated orders and not a final judgment.  A stipulated custody order may be a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result.  (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 258.)  Under the stipulated orders in effect at the time Adriana made her move-away request, neither parent had sole physical or legal custody of K., so Family Code section 7501 did not come into play.

Instead, the instant proceeding was the first proceeding at which an initial child custody judgment was rendered by the court.  In arriving at a judgment as to what custodial arrangement is in the best interest of the child, "'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining'" that custody arrangement.  (*In re*

11

*Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956, citing *Burgess, supra*, 13 Cal.4th at pp. 32–33.)

Because no prior final judgment as to child custody had been previously rendered, the changed circumstance rule does not apply to a modification request seeking a change in the parenting or visitation schedule. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077, citing *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379–1380; *In re Marriage of Birnbaum* (1989) 211 Cal.App.3d 1508, 1513.) The court is guided by the "best interests" of the child in making such orders.

"'In an initial custody determination, the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child." [Citation.] It must look to *all the circumstances* bearing on the best interest of the minor child. [Citation.]'" (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087, quoting *Burgess, supra*, 13 Cal.4th at pp. 31–32.)

In the present case, the court determined that there was no final child custody judgment that had been awarded following a contested hearing, because the stipulated parenting agreements between the parties did not contain the language necessary to constitute a clear, affirmative indication that they were intended to be a final judgment on custody. As such, neither parent could be described as the parent entitled to physical custody of K., despite the fact he had lived with each parent for significant periods of time under their shared parenting agreement. Thus, the court was required to determine custody based on the child's best interests.

The trial court in this case made the determination as to K.'s best interests in entering a final judgment of child custody that awarded both parents legal and physical custody. Adriana was not prejudiced by this order, insofar as the judgment rendered by the court on the issue of child custody reflected the same award of custody previously ordered by stipulation of the parties: joint legal and physical custody. In other words, before the hearing, as well as after the judgment, both parents shared joint legal and physical custody. Thus, the court did not modify a final judgment awarding legal or physical custody. Because Adriana did not lose any custodial rights, she was not prejudiced by the joint custody award.

As for the court's determination that K. would attend school in Randall's school district, the court intended only to modify the parenting and visitation schedule, based on K.'s best interests in continuity and stability. In this respect, as indicated, a child's best interests determination focuses on "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining" that custody arrangement. (*Burgess, supra,* 13 Cal.4th at pp. 32–33.)

For K., who had continuously attended a particular school—a school actually selected by Adriana prior to her enlistment—for more than one year (as near as we can tell from the limited record before us) in Orange County, maintaining that arrangement was a valid consideration by the court in arriving at its decision. Whether that continuity will continue to be in the child's best interests is a matter that can be re-evaluated as K.'s circumstances require.

13

In the meantime, despite the evidence of Randall's anger management issues, which he acknowledged, there was no evidence in the record that maintaining K. in the current parenting schedule would be detrimental to his welfare or that moving to South Carolina was in his best interests.  The court's shared parenting and visitation orders take this need for continuity into account, along with K.'s expressed desire to spend equal time with both parents.  Moving K. to South Carolina would have been disruptive.

After reviewing the limited record, we find the trial court properly exercised its discretion in making its child custody determination.

### DISPOSITION

The judgment is affirmed.  Costs are not awarded in this proceeding.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

MILLER

J.